In re ASSOCIATED HOBBY MANUFAC-
TURERS, INC., Debtor.

ASSOCIATED HOBBY MANUFACTUR-
ERS, INC., Plaintiff,

v.

ROHDE & LIESENFELD, GMBH & CO.
and Wolfgang Elke, Defendants.

Bankruptcy No. 82–04107G.
Adv. No. 82–2212G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 26, 1983.

Diane J. Sigmund, Wexler, Weisman, Forman & Shapiro, P.C., Philadelphia, Pa., for debtor, Associated Hobby Mfrs., Inc.

John W. Frazier, IV, Baldo M. Carnecchia, Jr., Alison Douglas Knox, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants, Rohde & Liesenfeld, GMBH & Co. and Wolfgang Elke.

Marvin Krasny, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for creditors' committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented in this case is whether we should grant the debtor's motion to hold a creditor in civil contempt for failure to comply with a temporary restraining order or the automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code ("the Code"). The debtor has also moved for a permanent injunction. For the reasons stated herein, we will deny both motions.

The facts of the case are as follows:[1] The debtor, Associated Hobby Manufacturers, Inc., is engaged in the business of purchasing, assembling and reselling to retail distributors various types of toy and hobby merchandise. In the early months of 1982 the debtor placed orders for approximately $220,000.00 worth of merchandise with certain manufacturers in Hong Kong. The debtor thereupon made arrangements with Rohde & Liesenfeld, GMBH & Co. ("R & L"), one of the defendants,[2] for shipment of the goods on the Maersk Shipping Lines from the Orient to Philadelphia. The goods were shipped in two 20-foot containers and

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The other defendant is Wolfgang Ehlke ("Ehlke"), the manager of the New York office of R & L.

seven 40-foot containers which arrived at the Maersk Tioga Marine Terminal in Philadelphia on several dates in August of 1982. The debtor was to have no interest in the goods until tender of the balance due on them was made to R & L. On August 31, 1982, the debtor informed R & L that it intended to file for protection under the Code on the following day. Acting on this information R & L immediately sought to ship the goods to its headquarters in Germany. The debtor thereafter filed a petition for reorganization under chapter 11 of the Code on September 1, 1982, and informed R & L of that fact on the following day. On September 3, 1983, R & L removed the goods from the Maersk Tioga Marine Terminal, took them to the Hapag-Lloyd Packer Avenue Terminal and then loaded them on a ship operating under the name of the Stuttgart Express which immediately began its voyage to Europe.

R & L informed the debtor on September 9, 1982, that the goods had been removed from the terminal and that they would be returned upon payment of the $130,000.00 balance due on them. This court then issued a temporary restraining order ("TRO") on September 10, 1982, directing R & L to unload the goods at LeHavre, France, which was the first port of call for the Stuttgart Express in Europe, and ship them by air to Philadelphia at R & L's expense. In evaluating the most expeditious means of complying with the TRO, R & L discovered that the two hour layover in LeHavre was not sufficient to allow the unloading of the merchandise. Although the ship docked in Antwerp on September 14 and in Rotterdam on the following day, R & L decided not to unload the goods at these locations due to the uncertainty of securing adequate cargo space on an air carrier. Air carriage of the seven 40-foot containers would have utilized virtually all of the cargo capacity of a 747 aircraft. When the ship reached its final destination of Hamburg on September 16, 1982, the two 20-foot containers were unloaded and shipped by truck to Frankfurt. The two containers were flown to New York the following day and were then transported by truck to Philadelphia for arrival on September 20. R & L then decided that the remaining merchandise, consisting of the seven 40-foot containers would remain on the Stuttgart Express which was scheduled for immediate return to North America, although its first port of call was Halifax, Nova Scotia, rather than Philadelphia. In order to hasten the arrival of the goods, R & L futilely requested that the ship sail first to Philadelphia. Upon arrival in Halifax on September 22, the goods were unloaded into trucks which arrived in Philadelphia on September 27 and 28. R & L's decision to keep the seven 40-foot containers on board ship was based upon several concerns, among which was the uncertainty of securing adequate air cargo space. Further burdening compliance with the TRO was the fact that the 40-foot containers could not be placed directly on an airplane; it would have been necessary to repack each 40-foot container into two 20-foot boxes. Repacking would have required the use of a significant amount of skilled labor which would have been unavailable in Hamburg at the time the goods were delivered, which was immediately prior to a weekend. Repacking also would have subjected the goods to a significantly greater risk of damage.

The debtor urges us to hold R & L in civil contempt of court for violating the TRO and 11 U.S.C. § 362(a). Civil contempt, if proven, is the proper vehicle for redressing these alleged transgressions. *See, e.g., Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976) (violations of § 362), cert. den. 429 U.S. 1093.

As a preliminary matter, R & L asserts that this court has no subject matter jurisdiction over this dispute in light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held that the direct grant of jurisdiction to the bankruptcy court to administer the Bankruptcy Code was unconstitutionally broad. However, we find that we have jurisdiction in this case due to the Emergency Rule adopted by our district court on December 21, 1982. *Coastal Steel Corp. v. Tilghman*

*Wheelabrator, Ltd.,* 709 F.2d 190 (3d Cir. 1983), and *Official Limited Partners Committee of Citadel Associates v. Bank Leumi Le-Israel, B.M. (In re Citadel Associates),* 31 B.R. 56 (Bkrtcy.E.D.Pa.1983). R & L also asserts that we lack subject matter jurisdiction over it due to a lack of proper service of the complaint initiating this action. Notwithstanding this alleged procedural omission, R & L was promptly informed of the pendency of the bankruptcy action and the defendant's counsel was apparently present at all pertinent hearings. Bankruptcy Rule 704(h)[3] which was in force in September of 1982 when this dispute arose, states that "[s]ervice of process under this rule shall be effective notwithstanding an error in the papers served or the manner or proof of service if no material prejudice resulted therefrom to the substantial rights of the party against whom the process issued." We find that the defect is immaterial since it worked no prejudice against R & L. *Moreck v. United States of America (In re Moreck),* 34 B.R. 119 (Bkrtcy.M.D.Pa.1982).

In pertinent part § 362 states as follows:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate;

\* \* \* \* \* \*

In order to find R & L in civil contempt we must find that there was a specific and definite order of the court which R & L violated while possessing actual knowledge of that order. *Abt v. Household Finance Co. (In Re Abt),* 2 B.R. 323, 325 (Bankr.E.D.Pa.1980). The automatic stay is effectively a court order with sufficient specificity for purposes of finding contempt. *Camelia Builders, supra.* The debtor has proved that R & L had knowledge of the filing of

the petition for reorganization under the Code prior to its removal of the goods, but we find that the debtor has failed to establish that R & L had knowledge of the proscriptions imposed by the automatic stay when it removed the goods from the Maersk Marine Terminal. The debtor argues that a creditor's knowledge of the filing of the petition without cognizance of the provisions of the stay should not preclude the debtor from prevailing on the action for civil contempt. We disagree. The case law indicates "that a person cannot be held in contempt of an order about which the person had no knowledge." *Camelia Builders,* 550 F.2d at 51. As indicated above, it is knowledge of the stay, not of the filing of the petition for reorganization that constitutes the contempt. Without knowledge of § 362 or of the TRO, no contempt can be found.

Alternatively, we find that the debtor's effort to establish contempt under § 362(a) has failed because it has not proven that R & L knowingly violated any of the proscriptions of the stay. To prevail in an action for contempt the moving party must prove its case by clear and convincing evidence, rather than by the usual standard of a preponderance of the evidence. *Schauffler v. Local 1291, International Longshoremen's Association,* 292 F.2d 182 (3d Cir.1961). *Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3d Cir.1982). The Court of Appeals for the Third Circuit made it crystal clear in *Fox v. Capital Co.,* 96 F.2d 684, 686 (3d Cir.1938) that

The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by clear and convincing evidence, and where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt.

In addressing the merits of the debtor's action for civil contempt under the TRO we find that R & L has failed to fulfill the express mandate of the order. But, not-

---

**3.** Bankruptcy Rule 704 as well as Rules 1 to 13–901 were superceded on August 1, 1983, by the adoption of the new Bankruptcy Rules.

withstanding this fact, R & L asserts that it should not be held in contempt since precise compliance was frought with difficulties of repacking and reshipping the merchandise which undermined the prompt return of the goods and since R & L substantially endeavored to comply with the TRO. The law in this district has been aptly summarized in a recent (1981) case as follows:

> In a civil contempt proceeding the proof of the defendants' contempt must be demonstrated by clear and convincing evidence. *Schauffler v. Local 1291, International Longshoremen's Association,* 292 F.2d 182 (3d Cir.1961). Although defendants' inability to comply with a judicial decree is a valid defense to civil contempt charges, "the federal rule is that one petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply.... The contrary burden is on the [defendants.]" *N.L.R.B. v. Trans Ocean Export Packing, Inc.* 473 F.2d 612, 616 (9th Cir.1973); *Aspira of New York, Inc. v. Board of Education of the City of New York,* 423 F.Supp. 647, 654 (S.D.N.Y.1976). The relevant inquiry in a civil contempt proceeding is whether the defendants took "all the reasonable steps within their power to insure compliance with the orders." *Sekaquaptewa v. MacDonald,* 544 F.2d 396, 406 (9th Cir. 1976). "[A] finding of civil contempt may be made if it is shown that a party has violated his obligations imposed by a court decree by a failure of diligence, ineffective control, and lack of purpose in effectuating the requirements of the decree." *Jordan v. Arnold,* 472 F.Supp. 265, 289 (M.D.Pa.1979), appeal dismissed, 631 F.2d 725 (3d Cir.1980).

*Halderman v. Pennhurst State School and Hospital,* 526 F.Supp. 414, 422 (E.D.Pa. 1981). Since we find that R & L took all reasonable steps within their power to insure compliance with the TRO, we find that it is not in contempt of court.

We will, accordingly, enter an order denying the debtor's motion for a permanent injunction and its motion to hold R & L in contempt.