In re Joseph S. WAGNER, Debtor.

Joseph WAGNER, Plaintiff,

v.

Hayward IVORY, Defendant.

Bankruptcy No. 86–02787G.
Adv. No. 86–1144G.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 12, 1987.

Jeffrey Edelson, Delaware County Legal Assistance Ass'n, Chester, Pa., for debtor/plaintiff, Joseph Wagner.

Barbara Jean Moleah, Philadelphia, Pa., for defendant, Ivory Hayward.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

The debtor, Joseph Wagner, filed this action against a creditor, Hayward Ivory ("Ivory"), seeking damages for violation of the automatic stay, 11 U.S.C. § 362.[1] Trial of this case was held on December 3, 1986. After consideration of the evidence admit-

---

1. The complaint also appears to assert claims for common law assault and common law battery. The debtor makes no reference to these claims in his post-trial submissions. In any event, it is unnecessary to reach these claims, on the facts before me, since there is no contention that the measure of damages for these claims is different than for a violation of the automatic stay.

ted at trial, I will award the debtor $100.00 in compensatory damages and $500.00 in punitive damages pursuant to 11 U.S.C. § 362(h). Debtor's counsel will be granted fifteen days to file a motion for award of attorney's fees.[2]

### I.

The debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on June 4, 1986. Ivory is an individual who was listed as a creditor on the debtor's petition for an obligation arising from the sale of two trucks to the debtor.

The precise details regarding the underlying transaction between the parties was not well developed at trial. In approximately December 1985, the debtor and Ivory formed a partnership. It appears that the purchase of the two trucks was related to the formation of the partnership and that the funds used to purchase the trucks were supplied by Ivory. The debtor has maintained possession of the vehicle since December 1985 and it appears that, since then, he has worked, at least occasionally, as a trucker.

Since the filing of the bankruptcy petition in June 1986, the debtor has asserted that he is the owner of the two trucks subject to a debt owed to Ivory. Ivory disputes the debtor's ownership of the vehicles.

On July 14, 1986, the debtor's counsel sent a letter to Ivory informing him of the filing of the bankruptcy petition. The letter also stated:

Horace Ivory was listed on the Petition as a creditor. Accordingly, please make no further attempts to collect upon this obligation. Please feel free to contact me if you have any questions about this.

Ivory received the July 14, 1986 letter and telephoned the debtor's attorney on July 29, 1986. Counsel confirmed their conversation as follows in a letter dated July 31, 1986: "As I have indicated during our telephone conversation of July 29, 1986, you were listed on Mr. Wagner's Chapter 13 Petition for $9,600.00."

On September 16, 1986, Ivory visited the debtor at his residence. The debtor lives in the cab of a trailer located on the lot where the trucks are stationed. On that date, the debtor and Ivory discussed the status of the trucks; their testimony differed as to the details of the conversation.[3] During the conversation, Ivory threatened to tow the trucks away. When the debtor reminded him of the bankruptcy filing, Ivory stated words to the effect that the court order does not mean anything to him.[4]

On September 16, 1986, the debtor's counsel sent Ivory a letter which stated that Ivory's conversation with the debtor and the threat to tow the trucks away violated the automatic stay of the Bankruptcy Code. The letter further warned that if Ivory communicated further with the debtor or made any effort to remove the trucks from the lot, counsel would file a contempt action. Ivory admitted receiving the September 16, 1986 letter.

During the evening of October 5, 1986, Ivory burst into the debtor's home, shut the lights and, in the darkness, held up a finger to the debtor's head (as if he were holding a gun) and screamed, "I'm not playing, I'm not playing, next time I'm going to blow your brains out, bring a gun

---

**2.** This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rule 7052.

**3.** The debtor testified that Ivory asked about "the problem with the trucks" and how much money it would cost to repair them. Ivory claimed that he visited the debtor to ask him not to drive the trucks because they were uninsured. Ivory believed that his name was on the title and that he could be responsible if the trucks were in an accident.

**4.** In his testimony at trial, Ivory denied threatening to tow the trucks. He did admit the following:

Q. Well, when you stopped over on the 16th, did you tell him you wanted the trucks back?
A. Yeah. I told him that. I think I told him that on the 16th, I would like to have both of my trucks back.

Based on my consideration of the witnesses' demeanor, I credit the debtor's testimony over Ivory's with respect to the events of September 16, 1986.

and I'll blow your brains out."[5] After Ivory left, the debtor notified the police. On November 6, 1986, Ivory pled guilty to the charge of criminal harassment before a Pennsylvania district justice and paid a $25.00 fine. He was not represented by counsel in the criminal proceeding. Neither he nor the debtor testified before the district justice.

The debtor testified that on December 7, 1986, he saw Ivory's automobile stop and double-park in front of his residence and he saw Ivory point at him or his truck. The next day, the debtor discovered that a license plate had been removed from one of his trucks. Without the license plate, the debtor explained that he could not operate the vehicle and, as a result, he was unable to fulfill a trucking contract which would have paid him approximately $325.00.[6]

## II.

The debtor has not articulated his precise legal theory for recovery in either his complaint or his post-trial submissions. Specifically, he has not distinguished between a civil contempt proceeding and a proceeding under 11 U.S.C. § 362(h).[7] He simply asks the court to award damages based on a finding that Ivory violated the automatic stay.[8]

In response to the debtor, Ivory separately examines each of the three incidents and argues that the debtor has not proven his case. With respect to the September 16, 1986 incident, Ivory asserts that he is not liable because, at that time, he lacked "specific knowledge" of the existence or effect of the automatic stay.[9] Next, while conceding that his next contact with the debtor on October 5, 1986 "may be said to have violated the automatic stay," Ivory asserts that he is not liable because he lacked a "contumacious frame of mind" when he contacted the debtor. Finally, Ivory argues that there is no competent evidence to establish that he removed the license plate from one of the trucks in December 1986 and, therefore, he is not responsible for any damages which resulted from the removal of the plate.

Based on the evidence before me, I conclude that Ivory violated the automatic stay on September 16 and October 5, 1986. The most relevant subsections of section 362 in this case are (a)(3), which stays acts to obtain possession of property of the estate and, perhaps, (a)(6), which stays acts to collect prepetition claims. Simply put, on September 16 and October 5, 1986, Ivory went to the debtor's residence and demanded return of property of the estate. However, I find no violation of the automatic stay arising from the December 1986 incident. At most, the evidence

---

5. Ivory denied threatening the debtor or pointing a finger at his head. He did admit that he visited the debtor's residence on October 5, 1986. He also admitted that when he entered the trailer, he "accidentally" kicked an electric cord that put the lights out and that, after doing so, he did not plug the lights back in. He claims that he then asked the debtor not to drive the trucks without insurance. I disbelieve Ivory's version of the events.

6. The debtor requests that the court find that, as a result of the loss of the license plate, the debtor has been unable to operate his tractor and has lost a job and approximately $500.00 per week. There is no support in the record for this proposed finding.

7. Section 362(h) provides:
 An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

8. The violation of the stay, by itself, does not support an award of monetary damages and attorney's fees. The court must also consider the state of mind of the party who has violated the stay, i.e., whether the party had knowledge of the stay. See discussion in Part III, infra. By comparison, no showing of knowledge is required to obtain relief to reverse the effect of actions taken in violation of the stay, as such acts are void. E.g., Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); In re Clark, 69 B.R. 885, 889–90 (Bankr.E.D.Pa.1987); In re Grosse, 68 B.R. 847, 850 (Bankr.E.D.Pa. 1987).

9. Ivory also claims that the only evidence that he threatened to tow the trucks is found in debtor's counsel's letter of September 16, 1986. This is not accurate. The debtor testified regarding the threat, see N.T. 6, and I have credited his testimony.

establishes that Ivory may have driven by the debtor's residence on his way to work and stopped there briefly. He did not leave his automobile or speak with the debtor. I also find the evidence insufficient to convince me that Ivory was responsible for the removal of the license plate from the debtor's truck. Thus, he has no responsibility for any monetary damages the debtor may have suffered from his inability to utilize the truck in his business.

In light of these conclusions, I must still decide whether Ivory is liable to the debtor for the violations of the automatic stay which occurred on September 16 and October 5, 1986. The violation of the stay, by itself, does not support an award of damages and attorney's fees. *See In re Ramage,* 39 B.R. 37 (Bankr.E.D.Pa.1984). Therefore, I must consider Ivory's argument that he lacked the requisite state of mind necessary for a court to impose liability upon him.

### III.

The importance of the automatic stay was well articulated in the Bankruptcy Code's legislative history:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all foreclosure action. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296, *quoted in, Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982). *See generally In re Clark,* 69 B.R. 885 (Bankr.E.D.Pa.1987).

Prior to the enactment of 11 U.S.C. § 362(h), parties aggrieved by a violation of the automatic stay ordinarily invoked the remedy of civil contempt. *See* Kennedy, *The Automatic Stay in Bankruptcy,* 11 U.Mich.J.L.Reform 177, 259–66 (1977). In order for a party to be held in civil contempt, a court must find that the party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Mercer v. D.E.F., Inc.,* 48 B.R. 562 (Bankr. D.Minn.1985); *In re Damon,* 40 B.R. 367 (Bankr.S.D.N.Y.1984); *Matter of Depoy,* 29 B.R. 466 (Bankr.N.D.Ind.1983); *In re Demp,* 23 B.R. 239 (Bankr.E.D.Pa.1982). *See also Kellog v. Chester,* 71 B.R. 36, 38 (N.D.Tex.1987) (level of knowledge for finding of civil contempt is "not high" and good faith is irrelevant). Thus, if the stay is violated by a party who had no knowledge of the bankruptcy filing, no contempt would lie. The moving party must prove his case by clear and convincing evidence. *E.g., In re Mack,* 46 B.R. 652 (Bankr.E.D. Pa.1985). Upon a finding of civil contempt, a court may impose a fine or *in terrorem* damages in order to coerce compliance with its orders; it may also award damages to compensate the aggrieved party for any actual loss suffered, as well as attorney's fees and costs. *E.g., Matter of Depoy.*

Section 362(h) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 ("BAFJA") and provides for recovery of actual damages, attorney's fees, costs and, where appropriate, punitive damages, for a "willful" violation of the automatic stay. The precise reason for the enactment of subsection (h) is not clear. *See* 2 *Collier on Bankruptcy* ¶ 362.12, at 362–74 (15th ed. 1987) ("Collier"). It does appear, though, that the subsection (h) was meant to supplement, not replace, the civil contempt remedy. *See* 130 Cong.Rec. H1942 (daily ed. March 26, 1984) (remarks of Rep. Rodino) (section 362(h) "is an additional right of individual debtors, and is not intended to foreclose recovery under already existing remedies"); 2 *Collier* ¶ 362.13, at 362–74 (suggesting that while recovery of damages, counsel fees and costs may be discretionary in a contempt proceeding,

such relief is mandatory under section 362(h)).

Some courts have construed the term "willful" in section 362(h) to mean "deliberate" or "intentional." *In re Mewes*, 58 B.R. 124 (Bankr.D.S.D.1986); *In re Tel-A-Communications Consultants, Inc.*, 50 B.R. 250 (Bankr.D.Conn.1985). At first blush, the use of the term willful might be read to imply a higher degree of scienter than that required in civil contempt proceedings. However, I conclude that Congress intended that the state of mind requirement for the recovery of *actual* damages, attorney's fees and costs should be the same in the two types of proceedings. *But see In re Forty-Eight Insulations, Inc.*, 54 B.R. 905 (Bankr.N.D.Ill.1985). In effect, the willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order.

 I reach this conclusion based upon the apparent purpose behind the enactment of section 362(h) and its interrelationship with the contempt remedy. Given the important interests implicated by the violation of the automatic stay, *see In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, I must presume that Congress did not intend to abrogate the right to seek civil contempt, the remedy traditionally available to aggrieved debtors for violations of the automatic stay. *See Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *In re Kenval Marketing Corp.*, 69 B.R. 922, 931 (Bankr.E.D.Pa.1987). Indeed, the legislative history suggests the contrary. If section 362(h) were intended to impose a more stringent "state of mind" standard before relief may be granted, section 362(h) would be superfluous; an aggrieved debtor would always seek civil contempt rather than invoke section 362(h).[10] It appears more likely to me that, in enacting section 362(h), Congress intended to clarify the bankruptcy court's authority to award punitive damages in an appropriate case for a violation of the automatic stay.[11] To the extent the use of the term willful connotes a higher state of mind standard, I conclude that the higher standard is relevant only in determining the propriety of awarding punitive damages under section 362(h).[12]

 Since the debtor seeks an award of punitive damages, I must also briefly address the circumstances in which such an award is appropriate. I find guidance on this question in *Cochetti v. Desmond*, 572 F.2d 102 (3d Cir.1978), a case decided under 42 U.S.C. § 1983. In *Cochetti*, the Third Circuit observed that punitive damages are awarded in response to particularly egre-

**10.** I recognize that there has been some judicial debate whether bankruptcy courts have the authority to remedy civil contempt. *See Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986); *Kellogg v. Chester*, 71 B.R. 36 (N.D.Tex.1987). I need not consider that issue in this analysis. Even if bankruptcy courts lack civil contempt power, this would mean only that debtors would apply to the district court for relief. The incentive to seek civil contempt rather than utilize section 362(h) would remain the same, albeit in a different forum.

**11.** While I need not decide the issue, some courts have expressed concern that the award of punitive damages may transform a civil contempt proceeding into a criminal contempt proceeding or have otherwise questioned the authority of the bankruptcy court to award punitive damages for violation of the automatic stay. *Matter of Depoy*, 29 B.R. 471, 479–80 (Bankr.N.D.Ind.1983). *See also In re Zartun*, 30 B.R. 543,

546 (Bankr. 9th Cir.1983); *In re Promower, Inc.*, 56 B.R. 619 (Bankr.D.Md.1986); *Matter of Depew*, 51 B.R. 1010 (Bankr.E.D.Tenn.1985). Both before and after the enactment of BAFJA, the extent of the bankruptcy court's power to remedy criminal contempt has been unclear. *See 2 Collier on Bankruptcy* ¶ 105.03 (15th ed. 1987). If nothing else, section 362(h) lays to rest any doubt about the bankruptcy court's power to award punitive damages for a willful violation of the automatic stay.

**12.** I note that my analysis is not the first to interpret section 362(h) in accordance with its intended purpose rather than in a literal fashion. *See Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d at 292 (although statute refers to "individual" harmed by violation of the stay, section 362(h) may be invoked by corporate debtor); *In re Tel-A-Communications Consultants, Inc.*, 50 B.R. 250, 252 (Bankr.D.Conn. 1985) (same).

gious conduct for both punitive and deterrent purposes. Such awards are "reserved ... for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *Id.* at 106. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *Id.*

With the foregoing principles in mind, I turn to Ivory's arguments that he is not subject to liability for violating the automatic stay. First, Ivory contends that he was never informed of the existence or effect of the automatic stay prior to September 16, 1986 and therefore, his threat to tow the trucks was not contempuous or a willful violation of the stay. In making this argument, Ivory is apparently distinguishing between knowledge of the filing of the bankruptcy and knowledge of the existence and scope of the automatic stay, as there is no dispute that Ivory knew of the bankruptcy filing prior to September 16, 1986. There is some support for Ivory's position. *See In re Associated Hobby Manufacturers, Inc.,* 33 B.R. 959 (Bankr. E.D.Pa.1983) (alternative holding). However, I believe that the more sound view is that knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay. *In re Zartun,* 30 B.R. 543 (Bankr. 9th Cir.1983). To conclude otherwise would undermine the purpose of the statutory injunction and to render its effect less certain. *Cf. In re Mellor,* 31 B.R. 151, 155 (Bankr. 9th Cir.1983) (dissenting opinion) (violation of the stay is a "serious matter which should not be disregarded ... without compelling reason"), *majority opinion rev'd,* 734 F.2d 1396 (9th Cir.1984). At a minimum, a party with knowledge of the bankruptcy filing is put on sufficient notice to expect that he will inquire further regarding the meaning of the legal proceeding; such inquiry should give him actual knowledge of the automatic stay and its scope. *See In re Bragg,* 56 B.R. 46 (Bankr.

M.D.Ala.1985); *Matter of Depoy,* 29 B.R. at 476. Indeed, in this case, Ivory was not only informed of the bankruptcy filing but he was also instructed not to make any further collection efforts by the letter of July 14, 1986 which he received from the debtor's counsel. Thus, while the letter may not have expressly referred to the existence of a court order,[13] it put Ivory on notice of the conduct proscribed by the automatic stay. Thus, I find that there is sufficient evidence to conclude that when Ivory threatened to tow the trucks on September 16, 1986, his action was willful under section 362(h) and in contempt of the automatic stay. However, I also conclude that the circumstances do not justify the imposition of punitive damages for this conduct.

Next, I reject Ivory's argument that his conduct on October 5, 1986 is excusable because he had a good faith, albeit mistaken, belief that he was not a creditor of the debtor and was not covered by the automatic stay. His conduct was undoubtedly deliberate, with knowledge of the automatic stay and therefore, willful. By taking matters into his own hands, rather than seeking clarification from this court as to his status and the scope of the automatic stay, Ivory "undertook a calculated risk under threat of contempt" that his legal judgment was correct. *Matter of Depoy,* 29 B.R. at 476; *accord, In re Rhyne,* 59 B.R. 276 (Bankr.E.D.Pa.1986) (attorney held in contempt for proceeding on prepetition claim on mistaken belief debtor was obliged to serve certified copies of bankruptcy document upon him); *Mercer v. D.E.F., Inc.,* 48 B.R. at 564–65 (creditor acted "at its own peril" in repossessing property with actual knowledge of the stay but before receipt of "official" notice of the bankruptcy); *In re Ashby,* 36 B.R. 976 (Bankr.D.Utah 1984) (creditor held in contempt even though it acted upon advice of counsel). *See generally United States v. Norton,* 717 F.2d 767, 773–74 (3d Cir.1983) (IRS not held in contempt where legal issue

13. It would have been better practice for counsel to have made express reference to the automatic stay.

was "much litigated and controversial"). *But see In re Ramage* (request for finding of contempt denied); *In re Wilson*, 19 B.R. 45 (Bankr.E.D.Pa.1982) (sheriff held in contempt but debtor's request for attorney's fees denied because sheriff's actions based on good faith misinterpretation of law). On September 16, 1986, the debtor's counsel had warned Ivory in writing that further contact with the debtor or effort to retrieve the trucks would be improper. Ivory himself admitted at trial that he did not "take seriously" the September 16 letter from the debtor's counsel. N.T. 34. These facts demonstrate that Ivory acted deliberately, intentionally and perhaps even with "arrogant defiance" of federal law. *In re Tel-A–Communications Consultants, Inc.*, 50 B.R. at 255. A finding of contempt and an award of actual damages, attorney's fees and costs are fully justified.

In addition, I conclude that this is an appropriate case for the award of punitive damages. As one court has put it, "[t]his is not a case of an ambiguity which is to be construed in favor of the alleged contemnor." *In re Damon*, 40 B.R. at 375. Rather, this is a case in which there is no justification of any kind for Ivory's behavior. *See Mercer v. D.E.F., Inc.* (punitive damages awarded against creditor that broke down door of debtor's residence to effect a repossession of personal property); *accord, In re Davis*, 62 B.R. 345 (Bankr.S. D.Ohio 1986). The deterrent and punitive purposes of an award of punitive damages would be well served in this case.

### IV.

Finally, I must determine the amount of damages. The debtor is entitled to actual damages, punitive damages, attorney's fees and costs. 11 U.S.C. § 362(h).

▮ The debtor produced very little evidence that he suffered any actual harm as a result of Ivory's violations of the automatic stay. The alleged loss of the trucking contract was not linked to the stay violations which occurred on September 16 and October 5, 1986. There was no other evidence of any out-of-pocket losses. Nor was there any evidence that the debtor

suffered any long term physical or emotional harm as a result of the threats Ivory made on October 5, 1986. It was apparent, however, from my observation of the debtor's testimony itself, that he experienced some shock, alarm and fear while the incident took place. I find it appropriate to award him $100.00 in actual, compensatory damages. *See Mercer v. D.E.F., Inc.*, (debtor awarded $1,000.00 for humiliation, embarrassment, anxiety and frustration against creditor who broke and entered her residence in violation of the automatic stay). No damages will be awarded as a result of the violation of the automatic stay which took place on September 16, 1986 as there was no evidence that the debtor suffered any harm. *See In re Promower, Inc.*, 56 B.R. 619, 623 (Bankr.D.Md.1986) (no compensatory damages award due to lack of proof); *In re Demp* (same).

▮ In setting the amount of punitive damages, I must consider both the nature of the defendant's conduct and his ability to pay. *E.g., Kerr v. First Commodity Corp.*, 735 F.2d 281 (8th Cir.1984); *Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.*, 727 F.2d 1470 (9th Cir.1984); *Bemer Aviation, Inc. v. Hughes Helicopter, Inc.*, 621 F.Supp. 290 (E.D.Pa.1985), *aff'd*, 802 F.2d 445 (3d Cir.1986). "The award must be sufficient to sting the pocketbook of the wrongdoer." *Mercer v. D.E.F., Inc.*, 48 B.R. at 566. In this case, again, the record could be better; the debtor did not elicit much evidence regarding Ivory's financial condition. The record does reflect that Ivory is employed as an electrician by the Scott Paper Co. and, in 1986, worked the night shift. I infer from this evidence that Ivory is an individual with a moderate to middle level income. I believe that an award of $500.00 in punitive damages would be sufficient to impress Ivory with his obligation to comply with orders of this court and to deter future transgressions. *See also In re Davis*, 62 B.R. at 348 ($1,000.00 in punitive damages awarded, apparently without consideration of defendant's net worth); *In re Tel-A–*

*Communications Consultants,* 50 B.R. at 255 (same).

As for attorney's fees and costs, I will give the debtor fifteen days to file a motion in conformity with the standards set forth in *In re Fine Paper Litigation,* 751 F.2d 562 (3d Cir.1984) and *In re Meade Land Development Co.,* 527 F.2d 280 (3d Cir. 1975).

An order consistent with this opinion will be entered.[14]

### ORDER

AND NOW, this 12 day of June, 1987, it is ORDERED that:

1. The Chief Deputy Clerk in Charge of Bankruptcy Operations shall enter judgment, in accordance with Bankr.Rule 9021(a), as follows:

(a) in favor of plaintiff and against defendant for actual damages in the amount of $100.00.

(b) in favor of plaintiff and against defendant for punitive damages in the amount of $500.00.

2. The plaintiff is granted fifteen days to file a motion for award of attorney's fees and costs in accordance with the standards set forth in *In re Fine Paper Litigation,* 751 F.2d 562 (3d Cir.1984) and *In re Meade Land Development Co.,* 527 F.2d 280 (3d Cir.1975).

---

14. An action under 11 U.S.C. § 362(h) is a core proceeding. *Budge Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir.1986); *Matter of Crum,* 55 B.R. 455 (Bankr.M.D.Fla. 1985); *In re Depew,* 51 B.R. 1010 (Bankr.E.D. Tenn.1985). Therefore, I will enter a judgment in this case. *See* 28 U.S.C. § 157(b)(1).