**IN RE: Amel M. ODOM, Debtor.**

**Bky. No. 15–19111 ELF**

United States Bankruptcy Court, E.D. Pennsylvania.

Signed August 10, 2017

Stephen Matthew Dunne, Dunne Law Offices, P.C., Philadelphia, PA, for Debtor.

William C. Miller, Philadelphia, PA, for Trustee.

## MEMORANDUM

ERIC L. FRANK, CHIEF U.S. BANKRUPTCY JUDGE

### I. INTRODUCTION

Presently before the court is the Debtor Amel M. Odom's Motion for Sanctions for Violation of the Automatic Stay ("the Motion"). The respondent is the Philadelphia Parking Authority ("the PPA").

The Debtor filed the Motion on June 2, 2017, shortly after the PPA impounded his automobile. The PPA filed a response the Motion on June 16, 2017. The hearing on the Motion was held and concluded on July 20, 2017. The Debtor was the only witness. The matter is ready for decision.

What is quite striking about the Motion is that this is the second time during the pendency of this bankruptcy case that the PPA has impounded the Debtor's automobile in violation of the automatic stay. The prior seizure occurred on June 10, 2016 and is the subject of an adversary proceeding the Debtor initiated against the PPA asserting a claim under 11 U.S.C. § 362(k) for violation of the automatic stay. (See Adv. No. 16–0195) ("the AP").[1] In part, the PPA's defenses to the current Motion mirror the defenses it raised in the AP.[2]

For the reasons set forth below, the Motion will be granted because the PPA violated the statutory injunction imposed by 11 U.S.C. § 362(a)(6).[3] As a contempt remedy for violation of the automatic stay, the Debtor will be awarded compensatory damages of $5,046.00 and reasonable attorney's fees in an amount to be determined.

### II. FINDINGS OF FACT

1. The Debtor owns a 2007 Audi Q7 ("the Car").

2. On December 22, 2015, the Debtor filed a voluntary Chapter 13 bankruptcy case.

3. On January 5, 2016, the Debtor filed his bankruptcy schedules. (Bky. No. 15–19111, Doc. #8).

4. The Debtor's chapter 13 plan was confirmed on August 23, 2016.

5. In his bankruptcy schedules, the Debtor listed a debt to the Philadelphia

---

1. 11 U.S.C. § 362(k) provides, in pertinent part:

   (1) ... an individual injured by any <u>willful</u> <u>violation</u> of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

2. In both matters, the PPA asserts the defense of governmental immunity.

   The events giving rise to the Motion and the Motion itself were filed while cross-motions for summary judgment were under advisement in the AP. Simultaneously with the entry of this Memorandum and accompanying Order, I am entering a Memorandum (hereafter the "AP Mem.") and Order largely denying the cross-motions. In light of the overlap between the two (2) matters, I will refer to the AP Memorandum later in this Memorandum.

3. 11 U.S.C. § 362(a)(6) provides that the filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

Traffic Court for unpaid parking tickets.

6. The PPA is a local government agency whose duties include assisting the Philadelphia Traffic Court in collecting unpaid parking tickets.[4]

## June 2016—First Impoundment of the Car

7. On June 10, 2016, the PPA impounded the Car,

8. On June 16, 2016, after receiving oral notice of the Debtor's bankruptcy filing, the PPA released the Car to the Debtor.

9. Based on the June 10, 2016 impoundment of the Car, the Debtor filed an adversary complaint on June 16, 2016, initiating the AP asserting a claim under 11 U.S.C. § 362(k).

10. In the AP, the Debtor asserts that the PPA had notice of his bankruptcy filing no later than April 15, 2016 (prior to the June 10, 2016 seizure of the Car).

11. In the AP, the PPA denies that it had notice of the bankruptcy filing prior to June 16, 2016.[5]

## June 2017—Second Impoundment of the Car

12. The PPA "booted" the Car on June 1, 2017.

13. The PPA towed and impounded the Car on June 2, 2017.

14. Prior to June 1, 2017, the PPA had notice of the Debtor's bankruptcy filing.

15. The Debtor's bankruptcy case was still pending on June 1, 2017.

16. The PPA's seizure of the Car was an attempt to collect a prepetition debt.[6]

17. On June 1, 2017, the Debtor was in the midst of a one (1) week vacation with his spouse and mother-in-law in Puerto Rico.

18. The Debtor's mother-in-law was terminally ill at that time. She passed away several weeks later.

19. On June 1, 2017 the Debtor's sister telephoned and told him that the Car had been booted.

20. That night, the Debtor sent an e-mail to his bankruptcy counsel regarding the problem.

21. The next morning, June 2, 2017, the Debtor's sister telephoned the Debtor

---

4. For a description of the Philadelphia Traffic Court, see AP Mem., slip op. at 3 n.2.

5. Thus, in the AP, while the PPA admits that it violated the automatic stay, it denies that the violation was "willful." Willfulness is an element of a cause of action under 11 U.S.C. § 362(k). Consequently, the PPA denies that it is subject to liability in the AP. It also asserts governmental immunity as a defense to the § 362(k) claim.

6. At the conclusion of the hearing, the PPA argued that the Debtor failed to provide that the booting and seizure of the Car on June 1 and 2, 2017 were motivated by an effort to collect a prepetition debt. The PPA suggested that it was enforcing post-petition debts that have arisen.

As factfinder, I reject this contention. The PPA never offered any competent evidence of the existence, as of June 1, 2017, of an unpaid post-petition debt that would have caused the PPA to impound the Car. Further, considering the nature of the contention, the PPA was in the best position to present supporting evidence. Its failure to do so causes me to draw the opposite inference, i.e., that it is more likely than not that the PPA's actions were based on efforts to collect a prepetition debt. See generally Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995) (nonproduction of evidence by a party may result in negative inference that evidence would be harmful to that party if the evidence was within the party's control and there is no showing that the evidence is unavailable).

and told him that his car had been towed.

22. On June 3, 2017, the Debtor's counsel advised him that the PPA would release the Car, but that the Debtor had to retrieve the vehicle personally.

23. On June 5, 2017, the Debtor and his family returned to Philadelphia.[7]

24. Family and friends picked up the Debtor and his family and transported them from the airport back to their respective homes.[8]

25. The Debtor retrieved the Car from the PPA impound lot in the evening of June 5, 2017 at approximately 9:00 to 9:30 p.m.

### Compensatory Damages

26. The Debtor's vacation and return travel plans were disrupted by the impoundment of the Car.[9]

27. After learning of the impoundment of the Car on June 1, 2017, the Debtor had difficulty sleeping that night.

28. The Debtor was frustrated, confused, upset and inconvenienced by the impoundment of the Car.

29. The seizure of the vehicle caused marital discord.[10]

30. The Debtor felt "disrespected" and was embarrassed by the impact the seizure of the Car had on his wife and mother-in-law.[11]

31. The impoundment of the Car caused the Debtor to incur $46.00 in telephone charges for additional calls made from Puerto Rico.

32. The Debtor is entitled to $5,000.00 in damages for the emotional distress he suffered as a result of impoundment of the Car.

33. The Debtor suffered no other compensable damages.[12]

---

**7.** The Debtor testified that he could not remember when he left Puerto Rico or when he arrived in Philadelphia on June 5th.

**8.** The Debtor and his wife live together. His mother-in-law lived elsewhere.

**9.** The Debtor had arranged for his sister to use the Car to pick up him and his family at the airport. After the impoundment of the Car, the Debtor had to spend time making other arrangements for transportation from the airport.

**10.** The Debtor explained that he and his wife had ongoing issues as to whether the Debtor adequately handled his responsibilities. The impoundment of the vehicle undercut the Debtor's representation to his wife that he had taken care of his prior problems with the PPA.

**11.** While the Debtor testified that he and his wife were aware that his mother-in-law was terminally ill prior to taking this vacation, he did not state whether they were aware that she would pass away so quickly after their return from Puerto Rico. It is not clear how emotionally significant this joint trip was for the family. Thus, the record does not permit me to gauge the degree to which the news of the impoundment negatively affected family relations and emotions. Undoubtedly, however, the fact that this was the second time the PPA seized the Debtor's vehicle, notwithstanding the automatic stay, materially exacerbated the emotional distress the Debtor experienced. In short, while I do not credit all of the Debtor's testimony, see n.12, infra, I credit his testimony regarding the emotional distress he suffered as a result of this second, wrongful governmental seizure of his property.

**12.** In his testimony, the Debtor suggested that he was unable to work on June 5, 2017 and suffered monetary work loss damages. I am unpersuaded by this contention. His testimony on the subject was sketchy at best. He claimed, somewhat implausibly, that he was scheduled to work on June 5th, the day he was returning from Puerto Rico; yet, could not remember the departure or arrival times of his flight. This causes me to doubt the veracity of his testimony. If he were planning to go to his office on the same day that he was returning from a long trip, I would expect the air travel arrangements to be of great importance to him and that he would remember

## III. DISCUSSION

### A.

Through the Motion, the Debtor seeks a remedy for a violation of the automatic stay. In the prayer for relief in the Motion, the Debtor invokes the civil contempt remedy.[13]

Prior to the enactment of § 362(k) in 1984,[14] parties aggrieved by, and seeking a remedy for, the violation of the automatic stay ordinarily invoked the bankruptcy court's civil contempt authority under 11 U.S.C. § 105(a). See, e.g., In re Spookyworld, Inc., 346 F.3d 1, 8 (1st Cir. 2003); In re Colon, 114 B.R. 890, 895–96 (Bankr. E.D. Pa. 1990). The statutory remedy, § 362(k), supplements, but does not replace the contempt remedy. In re Wagner, 74 B.R. 898, 902 (Bankr. E.D. Pa. 1987);[15] accord In re Gervin, 300 Fed.Appx. 293, 301 (5th Cir. 2008) (nonprecedential); In re Leverette, 2013 WL 5350902, at *2 n.18 (Bankr. S.D. Miss. Sept. 25, 2013).

■ Civil contempt is a measure imposed to compel compliance with a court order and provide compensation to a party damaged by violation of that order. In the bankruptcy context, the automatic stay is equivalent to a court order. In re Noffsinger, 316 B.R. 283, 285 n.2 (Bankr. W.D. Ky. 2004); Armstrong v. Bailey, 2000 WL 33363300, at *2 (D. Utah May 18, 2000); In re Stephen W. Grosse, P.C., 84 B.R. 377, 383–84 (Bankr. E.D. Pa. 1988). Further, knowledge of the existence of the bankruptcy case is "treated as knowledge of the automatic stay." In re Theokary, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011) (collecting cases)

■ As a remedial measure, civil contempt sanctions are imposed whether or not the offending party acted in good faith or without willfulness or a specific intent to violate a court order. Univ. Med. Ctr. v. Sullivan, 122 B.R. 919, 932 (E.D. Pa. 1990), aff'd sub nom. In re Univ. Med. Ctr., 973 F.2d 1065 (3d Cir. 1992)

■ To succeed on a claim for civil contempt, a movant must establish, by clear and convincing evidence, that the other party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct. Wagner, 74 B.R. at 902 (citing cases); accord In re Vector Arms, Corp., 2015 WL 8999261, at *4 (Bankr. D. Utah Dec. 11, 2015); see also Marshak v. Treadwell, 595 F.3d 478, 485 (3d Cir. 2009) (in nonbankruptcy context, claim for civil contempt requires proof by clear and convincing evidence that a valid order of the court existed, that the other

those details just six (6) weeks later at the court hearing on the Motion.

In addition, the Debtor testified that he works on commission and could not quantify the effect of missing several hours of work. In light of the fact that he retrieved the Car at around 9:00 p.m. on June 5th, he could not explain why he could not work that day before traveling to the impoundment lot.

In short, the Debtor was not a credible witness on the subject of work loss damages.

13. In the Motion, the Debtor makes a passing reference to 11 U.S.C. § 362(k). In the circumstances of this case, I perceive no material difference between the two (2) remedies (i.e., contempt or § 362(k)) with respect to the relief available to the Debtor.

14. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353.

15. In Wagner, the court observed that the precise reason for enacting § 362(k) (then § 362(h)), was not clear, but cited authority suggesting that § 362(k) makes recovery of damages, counsel fees and costs mandatory for an aggrieved party, while such relief is only discretionary in a contempt proceeding. 74 B.R. at 902–03; see also In re Mariner Post–Acute Network, 329 B.R. 481, 488–89 (Bankr. D. Del. 2005) (citing cases).

party had knowledge of the order; and that the other party disobeyed the order).

■ Upon a finding of civil contempt, the court has broad discretion in fashioning an appropriate remedy. E.g., Marshak, 595 F.3d at 494. A court may impose a fine or in terrorem damages in order to coerce compliance with its orders; it may also award damages to compensate the aggrieved party for any actual loss suffered, as well as attorney's fees and costs. Wagner, 74 B.R. at 902; accord In re Antonious, 373 B.R. 400, 407 (Bankr. E.D. Pa. 2007); In re Thomas, 2000 WL 341020, at *3 (Bankr. E.D. Pa. Mar. 30, 2000); see generally Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994) (purpose of contempt remedy is make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed; as civil contempt remedy, court has discretion to award compensatory damages and attorney's fees).

### B.

The PPA has raised two (2) arguments in the nature of affirmative defenses. Neither argument merits a lengthy response.

First, the PPA asserts that it is immune from monetary liability. This is the same defense that the PPA raised and that I rejected in the AP. See AP Mem., slip op. at 9–13.

Second, the PPA asserts that it should not be held liable because it is not a creditor of the Debtor; its actions were taken as an agent of the actual creditor, the Philadelphia Traffic Court. In effect, the PPA argues that an agent of a creditor cannot be held in contempt for its own actions in violating the automatic stay.

The PPA cites no legal authority for the proposition it espouses. By comparison, numerous courts have held agents of creditors liable for conduct that violated 11 U.S.C. § 362(a). See In re McMullen, 386 F.3d 320, 331 (1st Cir. 2004); In re Beckford, 2017 WL 2729495, at *6 (Bankr. D. Conn. June 23, 2017); In re Stephen W. Grosse, P.C., 68 B.R. 847, 851 (Bankr. E.D. Pa. 1987); see also In re Rhyne, 59 B.R. 276, 279 (Bankr. E.D. Pa. 1986) (attorney of creditor held liable for violating discharge injunction).

■ The cited decisions find support in the text of 11 U.S.C. § 362(a), which does not limit the statutory injunction to the acts of creditors. The statute states that the bankruptcy filing operates as a stay "applicable to all entities." The Code defines entity as including "person, estate, trust governmental unit and the United States trustee." 11 U.S.C. § 101(15). Thus, § 362(a) creates a comprehensive injunction. If an entity acts to collect a prepetition debt not subject to automatic stay exceptions stated in § 362(b), the entity has violated the statutory injunction. It is irrelevant that the entity was collecting the debt on behalf of another.

### C.

■ Based on my factual findings, there can be no doubt that the Debtor has established by clear and convincing evidence all of the elements required for a finding that the PPA should be found in contempt of the automatic stay injunction.

The automatic stay imposes a specific and definite injunction that is equivalent of a court order. The PPA acknowledges, as it must, that it had notice of the Debtor's bankruptcy filing and the existence of the automatic stay. The PPA also makes no claim that there is any ambiguity in the terms of § 362(a) with respect to its prohibition of the booting and impoundment of the Car. It follows that the PPA violated the injunction doing so by attempting to collect a prepetition debt. See 11 U.S.C.

§ 362(a)(6) ("any act to collect ... or recover a claim against the debtor that arose before the commencement of the case").

**D.**

The final issue involves the fashioning of an appropriate remedy for the PPA's violation of the automatic stay.

In my discretion, I conclude that the Debtor is entitled to an award of compensatory damages and attorney's fees.[16]

The Debtor requests two (2) types of compensatory damages.

First, he seeks reimbursement of out-of-pocket losses. I have accepted his testimony that he incurred $46.00 in telephone "overcharges," so I will award him $46.00 in damages. He also asserted that he is entitled to an award for lost employment compensation. However, he did not provide coherent evidence connecting the seizure of the Car to any work loss. Nor did he provide any basis to quantify the claimed loss. That request will be denied.

Second, he seeks damages for emotional distress. Recently, the Court of Appeals held that non-pecuniary emotional harm constitutes "actual damages" within the meaning of 11 U.S.C. § 362(k). See In re Lansaw, 853 F.3d 657, 667–68 (3d Cir. 2017). I see no reason why the same principle should not apply in granting compensatory relief as a remedy for contempt of the automatic stay. Also, in Lanshaw, the court declined to establish a rigid rule requiring the submission of medical documentation or expert medical testimony to support a damage claim for emotional distress. Id. at 669. The same principle is applicable in the contempt context.

Here, given the circumstances surrounding the PPA's violation of the automatic stay, I am satisfied that the Debtor adequately established the PPA's conduct caused him emotional harm. The circumstances include the facts that: this was the second post-bankruptcy impoundment of the Car; he was in a remote location when he was informed of the seizure of the vehicle; that it disrupted his vacation and the return travel plans; and it caused marital discord.

As factfinder, I conclude that the Debtor is entitled to an award for emotional distress damages in the amount of $5,000.00.

Finally, in my discretion, I consider it appropriate to award the Debtor reasonable attorney's fees. The order accompanying this Memorandum will establish deadlines for the Debtor to file an appropriate motion and for the PPA to respond.

**IV.**

For the reasons set forth above, the Motion will be granted. An order consistent with this Memorandum will be entered.

**ORDER**

**AND NOW,** upon consideration of the Debtor's Motion for Sanctions for Violation of the Automatic Stay ("the Motion"), the response thereto filed by the Philadelphia Parking Authority ("the PPA"), and after a hearing, and for the reasons stated in court,

It is hereby **ORDERED** that:

1. The Plaintiff's Motion is **GRANTED.**

2. The PPA is **HELD IN CONTEMPT** for violation of the automatic stay statutory injunction, 11 U.S.C. § 362(a)(6).

---

16. In the Motion, the Debtor also requested an award of punitive damages. It is doubtful that I have the authority to impose punitive damages on the PPA as a contempt remedy.

See 11 U.S.C. § 106(a)(3); AP Mem., slip op. at 16–17. Assuming arguendo that I have the authority to impose punitive damages against the PPA, in my discretion, I decline to do so.

3. The Debtor is **AWARDED**, and the PPA shall pay the Debtor, compensatory damages of $5,046.00.

4. The Debtor is **AWARDED** reasonable attorney's fees in an amount to be determined.

5. The Debtor shall file a motion for award of attorney's fees **on or before August 25, 2017.**

6. Any response to the motion shall be filed **on or before September 11, 2017.**