**In re NWFX, INC., Debtor.**

**Bankruptcy No. FA 86–148 F.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 15, 1987.

M. Elizabeth Goff, Rose Law Firm, Little Rock, Ark., for Allen W. Bird II, trustee.

Charles A. Stupsker, Toledo, Ohio, for Nanjer, Inc.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court is the Motion for Certificate of Contempt filed by the trustee, Allen W. Bird II, in the above bankruptcy proceeding. In his motion, the trustee is seeking to have Nanjer, Inc. d/b/a Eastbridge Food Center (hereinafter "Nanjer") held in contempt for violating and disregarding Orders of this Court and to have sanctions imposed against Nanjer for violations of the 11 U.S.C. § 362 automatic stay under § 362(h). Based on the evidence, the Court makes the following ruling.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G) and may enter findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### Findings of Fact

On August 1, 1986, NWFX, Inc. ("NWFX") and two affiliated corporations, all of which were involved in the sales of money orders to various states and Puerto Rico, filed voluntary chapter 11 bankruptcy proceedings. On the day of the bankruptcy filing, the debtors provided telephonic notice of the filing to all sales agents of money orders, including Nanjer. Immediately upon filing the petitions, the debtors sent a mail-o-gram notice to agents, including Nanjer. Also, on August 1, 1987, the debtors filed three adversary proceedings (Complaints for Turnover) naming all money order sales agents, including Nanjer, as defendants seeking turnover of unused money order forms, money order imprinting machines and any funds held by the agents from the sales of money orders. Copies of the complaint were served on Nanjer. Copies of an Emergency Order entered by this Court on August 6, 1986 and an additional Emergency Order entered August 7, 1986, were also sent to Nanjer requiring turnover of the various monies and supplies held by agents. (Despite the turnover orders, Nanjer has not turned over the items designated.) Nanjer was also served with notice of a hearing to be held in Bankruptcy Court on August 22, 1986. On August 12, 1986, Allen W. Bird II was appointed as trustee. On October 22, 1986, an Order for first meeting of creditors and notice of the automatic stay was entered and sent to all creditors and agents, including Nanjer.

On November 6, 1986, a Complaint for Injunctive Relief was filed by Kenneth R. Cox, Director of the Department of Commerce, State of Ohio, and Mark V. Holderman, Acting Commissioner, Division of Securities, State of Ohio, against Nanjer in the Court of Common Pleas, Lucas County, Ohio, case number 86–3494, seeking to enjoin Nanjer's issuance of any NWFX money orders or documents and demanding an accounting for sales of money orders by Nanjer. The Complaint noted and described NWFX's involvement in the money orders and referenced NWFX's bankruptcy filing, but did not name NWFX as a party. Paragraph 10 of the Complaint for Injunctive Relief stated:

> Sometime after August 7, 1986, but before August 19, 1986, plaintiff Holderman received and read plaintiff's Exhibit F [this Bankruptcy Court's August 7, 1986 Emergency Order] which caused him to believe that NWFX, Inc., was insolvent and was the debtor in a Bankruptcy Court in Little Rock, Arkansas (plaintiff's Exhibit D [a copy of article which appeared in August 7, 1986 "American Banker" entitled "Money Orders Bounce as Firm Files Bankruptcy"]).

Paragraph 12 of the Complaint stated:

> On or about August 28, 1986, plaintiffs, by and through counsel, received actual

notice of the bankruptcy action in Arkansas, by virtue of obtaining a copy of a Court Order in that case (plaintiff's Exhibit F [this Bankruptcy Court's August 7, 1986 Emergency Order]).

Paragraph 13 of the Complaint stated: On or about September 2, 1986, plaintiffs ascertained that defendant was listed on Bankruptcy Court documents as an agent for NWFX, Inc.

Attached to the complaint were copies of this Court's Emergency Order entered August 5, 1986 ordering turnover of money orders and other supplies; this Court's Emergency Order entered August 7, 1986 ordering turnover and setting requirements for notices of the bankruptcy filings and procedures for filing claims by purchasers of money orders; a notice dated August 6, 1986 of a hearing sent by Mitchell, Williams, Selig, Jackson & Tucker, NWFX's attorneys, and filed in the above case; and a copy of an article from an August 7, 1986 issue of "American Banker" discussing the bankruptcy filing and this Court's rulings in hearings.

On December 4, 1986, Nanjer filed a Third Party Complaint against "Northwest Financial Express, Inc. a/k/a NWFX, Inc." in the Ohio state court action seeking a judgment for any amounts which Nanjer would be required to refund its customers relating to the sale of NWFX's money orders. The claim amount specified was $825.62. Nanjer attached and incorporated as an exhibit to the Third Party Complaint a copy of the Complaint for Injunctive Relief containing the allegations and exhibits regarding the bankruptcy filing. The third party complaint was served on the trustee

for NWFX and the trustee was required to respond and file pleadings in the Ohio case.

On January 16, 1987, the trustee filed its Motion for Contempt seeking to hold Nanjer in contempt for failure to abide by this Court's Orders for turnover pursuant to 11 U.S.C. § 105 and to have sanctions imposed for violations of the automatic stay pursuant to 11 U.S.C. §§ 105 and 362(h). Hearing was set for February 25, 1987. Nanjer failed to appear. At the hearing, the trustee testified that he and his attorneys, Rose Law Firm, P.A., had incurred attorneys fees in the amount of $1,160.00 through the date of the hearing in responding to the third party complaint, in filing a motion to remove the Ohio case to District Court for an anticipated change of venue to Arkansas District Court and reference to the Bankruptcy Court, as well as in filing of the Motion for Contempt and other related research. Additional fees subsequent to the hearing were incurred and presented to the Court in the amount of $1,330.00. At the hearing, the trustee did state that costs and other expenses had been incurred, but no specific amounts were provided.

Upon the conclusion of the hearing, the Court requested that the trustee and Nanjer file briefs regarding the Bankruptcy Court's power to hold Nanjer in contempt or impose sanctions. Both the trustee and Nanjer subsequently filed briefs.[1]

### Conclusions of Law

11 U.S.C. § 362(a) provides for an automatic stay against the commencement or continuation of any and all proceedings against a debtor.[2] 11 U.S.C. § 362(b) con-

---

1. The trustee, in his brief, has cited authority holding that the Bankruptcy Court and Bankruptcy Judges have the power to enforce Orders through contempt citations under 11 U.S.C. § 105 and impose sanctions pursuant to 11 U.S.C. § 362(h). Nanjer, in its memorandum brief, seeks to avoid contempt or sanctions by noting that not only had the Ohio state court action been settled, but that "Nanjer had filed the third party complaint, not in willful violation of any proceeding in ... bankruptcy court, but to establish the amount of financial loss by Nanjer."

The trustee is seeking an order from the Court holding Nanjer in contempt for failure to turn over certain items relating to the sale of money

orders. A telephone conference hearing was conducted on October 6, 1987. At that time, the attorneys for the parties agreed upon a method of locating and turning over any items which Nanjer may be retaining without further Court intervention. Therefore, the allegations seeking to hold Nanjer in contempt will be dismissed.

2. 11 U.S.C. § 362 in pertinent part provides: (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title [11 USCS § 301, 302 or 303], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)) [15 USCS

tains certain circumstances which are excepted from the automatic stay. As noted in the Legislative History of § 362, the automatic stay is one of the fundamental protections for both debtors and creditors under bankruptcy laws. The stay provides the debtor with a "breathing spell" from creditors and provides creditors with an orderly and equal treatment for claims. H.R.Rep. No. 595, accompanying H.R. 8200, 95th Cong., 1st Sess. 340–44 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

■ Section 362(h) of the Bankruptcy Code was enacted in 1984 to provide for sanctions for willful violations of the automatic stay. The section provides: "An individual injured by willful violation of a stay provided by this section [§ 362] shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." [3]

Courts have imposed sanctions under this provision since the provision was enacted. In *Budget Service Co. v. Better Homes of Virginia (In re Better Homes of Virginia)*, 804 F.2d 289, 292–93 (4th Cir. 1986), the Fourth Circuit Court of Appeals affirmed sanctions awarded by the bankruptcy court and affirmed by the district court for willful violation of the automatic stay and found that the bankruptcy court had acted within its power in awarding compensatory damages, attorney fees and punitive damages. The Court held that a finding of contempt was not necessary for imposition of the § 362(h) sanctions; proof that the debtor was injured by a willful violation of the automatic stay was sufficient. *Id.*

■ A violation of the automatic stay by a party does not automatically support an award of monetary damages or an imposition of sanctions. A court must find that a party acted with knowledge of the automatic stay. *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa.1987). Knowledge of the bankruptcy filing has been held to be the legal equivalent of knowledge of the automatic stay. *In re Wagner*, 74 B.R. at 904; *In re Zartun*, 30 B.R. 543 (Bankr. 9th Cir.1983).

■ In the present case, Nanjer filed suit against NWFX on December 4, 1986, while the automatic stay was in effect with knowledge of the pending bankruptcy proceeding and the automatic stay. Nanjer had received telephonic notice of the bankruptcy filing on August 1, 1986; mail-o-gram notice of the proceedings; notice of hearings and other pertinent dates, including the notice setting date for the first meeting of creditors and the notice of automatic stay. More importantly and emphasizing Nanjer's blatant violation of the automatic stay was the fact that a discussion of NWFX's bankruptcy proceeding was contained in the complaint for injunction served on Nanjer in the Ohio case. Exhibits were attached to the complaint for injunction consisting of orders of this Court, news articles regarding the bankruptcy proceeding and notice of hearings. In spite of its knowledge of the bankruptcy filing and the automatic stay, Nanjer filed the third party complaint against NWFX and even attached a copy of the complaint for injunction filed against Nanjer to the third party complaint.

Nanjer has argued that the third party complaint was not filed with the intent to willfully violate the automatic stay but as an attempt to establish the amount of Nanjer's financial loss, and that sanctions should not be imposed. The Court does not

---

§ 78eee(a)(3) ], operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title [11 USCS §§ 101 et seq.], or to recover a claim against the debtor that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.].

**3.** The sanctions available under § 362(h) are not limited to "individuals" in the literal sense, but includes corporations and other entities. *Budget Service Co. v. Better Homes of Virginia (In re Better Homes of Virginia)*, 804 F.2d 289, 292 (4th Cir.1986); *In re Tel-A-Communications Consultants*, 50 B.R. 250 (Bankr.Conn.1985).

find this argument persuasive. The Court finds that Nanjer's action of filing a third party complaint against NWFX constituted a violation of the automatic stay under § 362(a)(1), which prohibits the commencement of judicial proceedings against a debtor. Nanjer's actions were taken deliberately and with knowledge of the bankruptcy filing and were, therefore, willful. *See In re Wagner,* 74 B.R. at 904; *and In re Shafer,* 63 B.R. 194, 198 (Bankr.D.Kan. 1986).

At the hearing on the motion, the trustee testified that NWFX had incurred actual damages, including costs and attorneys fees. The trustee has been required to expend $2,490.00 in attorney fees to defend the state court action, file for removal to district court and prosecute the motion for sanctions in the bankruptcy court. Although the trustee testified that some costs were incurred, he could not state specific amounts and did not provide the Court with an accounting of the costs incurred. The Court will award actual damages to the trustee in the amount of $2,490.00. The allegations for costs will be dismissed.

Regarding punitive damages, the Court finds that imposition of punitive damages in a situation such as this case is proper as a deterrent to Nanjer and other entities who willfully violate the § 362 automatic stay provisions. Nanjer's actions had the effect of causing unnecessary expense to the debtor's estate which could have been avoided by Nanjer, if Nanjer had sought relief from the automatic stay in this forum. However, in view of the small claim amount sought to be established in the case in comparison to the amount of actual damages awarded, which exceeds the claim amount considerably, the Court will refrain from granting punitive damages in this instance. However, the Court's reluctance to impose punitive damages in this case, and the reasons therefor, are not intended to establish a precedent for granting or denying punitive damages. This Court will determine punitive damages on a case-by-case basis, without regard to specific claim amounts and after a review of facts and circumstances of a particular case.

An Order and Judgment consistent with this Memorandum Opinion will be entered of even date.