**In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.**

**MARITIME ASBESTOSIS LEGAL CLINIC, Plaintiff–Appellant,**

v.

**LTV STEEL COMPANY, INC., et al., Defendants–Appellees.**

No. 89 Civ. 4304 (KC).

United States District Court, S.D. New York.

March 17, 1990.

The Jaques Admiralty Law Firm, Detroit, Mich., for plaintiff-appellant.

Levin & Weintraub & Crames, and Davis Polk & Wardwell, New York City, for defendants-appellees.

CONBOY, District Judge:

This is an appeal from an order of the Bankruptcy Court of the Southern District of New York (Lifland, C.J.) awarding damages and sanctions pursuant to Section 362(h) of the Bankruptcy Code for numerous violations of the automatic stay.

## BACKGROUND

Judge Burton Lifland made the following findings of fact and conclusions of law in his Order dated May 18, 1989 ("Order"). On July 17, 1986, LTV Corporation and sixty-six of its affiliates including LTV Steel Company, Inc. (collectively "LTV") filed for voluntary bankruptcy in the Bankruptcy Court of the Southern District of New York under 11 U.S.C. § 301. Order, Finding of Fact No. 1. As a consequence of LTV's filing, the automatic stay of section 362(a) of the Bankruptcy Code (the "Code") prohibited all entities from commencing any action or proceeding "to recover a claim against the debtor that arose before the commencement of the case under this title" or "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1),(2). Subsequent to the filing of the bankruptcy petition, the Maritime Asbestosis Legal Clinic and its counsel Leonard C. Jaques (collectively "MALC"), who handle litigation on behalf of merchant seamen exposed to asbestos during their seafaring days, filed with the Bankruptcy Court proofs of claims on behalf of 157 maritime asbestos claimants. Each claimant alleged that LTV was indebted to him in the amount of $1 million. Order, Findings of Fact Nos. 3 and 4. These proofs of claims were based on causes of action for personal injuries resulting from exposure to asbestos on board ships owned or operated by LTV. *Id.*[1] These actions were "related" to asbestos actions already pending in the District Court for the Northern District of Ohio.

In addition, the following facts are not disputed by the parties to this appeal. On July 13, 1988, MALC instituted lawsuits in the United States District Court for the Eastern District of Michigan on behalf of 220 merchant seamen. LTV was named as a defendant in three of these suits. Since any acts of LTV that could have been responsible for the alleged injuries to the asbestos plaintiffs had already occurred, these asbestos proceedings could have been commenced prior to the filing date and thus were subject to the automatic stay provision of section 362(a) of the Code. These three suits were voluntarily dismissed by MALC after a request from LTV's in-house counsel. At that time, MALC changed the computer program it had used to process asbestos related litigation documents so as

**1.** After conducting a hearing on LTV's application to disallow the claims, Judge Lifland found that the circumstances warranted expunging the claims due to the lack of basic information about each claim. Appellee's Appendix to Brief on Appeal at Exhibit F. This disallowance is not implicated in this appeal.

to remove LTV as a defendant in the Michigan proceeding.

In the fall of 1988, Judge Thomas Lambros of the United States District Court for the Northern District of Ohio, who was presiding over the asbestos litigations in Michigan and Ohio, ordered the filing of amended complaints in the actions. Between March 1 and March 10, 1989, amended complaints were filed by MALC on behalf of 1,373 plaintiffs, naming 1,382 defendants, for a total of 20,493 amended complaints. MALC had written a computer changeover program to accomplish this task. The program writer, a non-lawyer, erred and replaced LTV's name into the program as a defendant. As a result, thirty-eight amended complaints were served on LTV. Each denominated LTV as "BANKRUPT" and was signed by a senior MALC attorney. Included in the thirty-eight amended complaints were the three complaints that had been filed and then withdrawn in July, 1988. Further, Judge Lifland found that proofs of claims had been previously filed in all of these thirty-eight cases. Order, Finding of Fact Nos. 5–6. On this occasion, rather than notifying MALC of its violation of the section 362(a) automatic stay and thereby enabling MALC to have the thirty-eight complaints that were in violation of the stay dismissed, LTV moved directly in the Bankruptcy Court of the Southern District of New York for damages against MALC and injunctive relief against the filing of any future complaints. LTV sent notice of its application to the Clerk of the District Court for the Northern District of Ohio. LTV did not contact MALC by telephone or otherwise to determine whether MALC was willing to rectify its error by withdrawing its thirty-eight complaints. MALC was, however, willing to rectify the error. MALC attorney Robert Swickle wrote LTV on March 20, 1989, offering to move to dismiss the cases and enclosing dismissal stipulations which LTV declined to sign.

In his Order dated May 18, 1989, Judge Lifland found that "[a]s of the date of the hearing [on LTV's motion for damages and injunctive relief] (April 19, 1989), ... [MALC] had failed and/or refused to withdraw or dismiss" the thirty-eight amended complaints. Order, Finding of Fact No. 7. He held that insofar as MALC and the asbestos plaintiffs had "irrefutable" knowledge of LTV's chapter 11 proceedings at the time they filed amended complaints as demonstrated by their previous filing of proofs of claims in bankruptcy and the three prior cases that had to be dismissed, MALC's acts were "intentional, wanton, willful" violations of the automatic stay. Order, Conclusions of Law Nos. 6–10. Because MALC had acted with "reckless misconduct," Judge Lifland imposed an award of damages against MALC under section 362(h) of the Code. Order, Conclusion of Law No. 11. Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). The parties somewhat interchangeably refer to these damages as sanctions, as does the relevant case authority. Although Judge Lifland found that MALC's actions were "clearly contumacious," he "held in abeyance" LTV's request for sanctions under section 105(a) of the Code and Bankruptcy Rule 9020. Order, Conclusion of Law No. 11. Judge Lifland also enjoined further claims against LTV. *Id.*

MALC originally filed a notice of appeal relating to the propriety of both the sanctions and the injunction, but in a stipulation subsequently filed with this Court, both parties have agreed to withdraw from the current appeal the issue of the propriety of the injunction. In the present appeal, MALC urges the following: (1) that Judge Lifland erred in imposing sanctions under section 362(h) because his fact finding that as of April 19, 1989, MALC had "refused and/or failed" to withdraw the amended complaints was clearly erroneous;[2] and (2) that even if we do not disturb this fact finding, Judge Lifland misapplied the law

---

2. Although MALC does not define this as a separate issue on appeal and has intermingled this issue with its discussion of questions of law, we will treat this as a distinct issue on appeal.

because (a) an intentional violation of the automatic stay, even if reckless, is not "willful" and "there must be proof [either] of an intention to violate the stay or ... proof from which one can infer an intent to violate the stay," Appellant's Main Brief in Support of Appeal at 9, (b) the statute authorizes damages only for "individuals" not corporations like LTV and (c) the statute does not authorize the award of compensatory damages absent a finding of injury to the debtor or actual damages. LTV responds that Judge Lifland's application of the law was correct because section 362(h) authorizes damages even for reckless violations of the stay such as MALC's to be paid to corporate debtors in addition to "individuals". LTV also asserts that section 362(h) authorizes compensation of a debtor for attorneys' fees incurred in bringing an action to assert rights under the automatic stay provision.

## ANALYSIS

The District Court has jurisdiction to hear and determine the issues presented on this bankruptcy appeal by virtue of 28 U.S.C. §§ 158(a) and 1334. A district court's appellate review of a decision of a bankruptcy court is governed by Fed.R. Bankr. 8013, which provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr. 8013. A bankruptcy judge's conclusions of law are subject to de novo review. *See, e.g., In re Beker Indus. Corp.,* 89 B.R. 336, 342 (S.D.N.Y.1988).

A. *Whether the Judge's Finding of Fact Was Clearly Erroneous*

As we have previously noted, MALC's assertion of clear error with reference to Judge Lifland's seventh finding of fact is buried in its discussion of the definition of "willful" under section 362(h). Appellant's Main Brief at 10. Accordingly, MALC has not carefully developed its reasoning as to why this finding should be reversed. What follows, therefore, is our attempt to divine the basis for this assertion.

■ MALC concedes that LTV refused to accept its offer in March, 1989, to withdraw the thirty-eight amended complaints, Appellant's Main Brief at 6, and accepts a purely disjunctive formulation of the disputed fact finding that MALC "failed and/or refused" to withdraw the complaints, *id.* at 8.[3] Thus, the only way for us to make sense of its allegation of clear error in Judge Lifland's finding that MALC *failed* to withdraw the complaints is to assume that MALC asserts that as a matter of law there can be no violation of the automatic stay absent a demand by the debtor for withdrawal of the violation and a refusal by the offending creditor. *See id.* at 11 (there was no willful violation of the stay because MALC "was not given an opportunity to correct its error prior to the Application for Sanctions being filed"). LTV, by contrast, asserts that it has a right "to exercise its bankruptcy remedies to the fullest extent possible" and cannot be forced to "seek to vindicate its fundamental statutory rights in another ... jurisdiction"—whether that be in the Northern District of Ohio or, by extension, by way of negotiations with MALC. Appellee's Surreply Brief at 5 n.*. Therefore, LTV urges that its "choice of forum is not open to MALC's second guessing...." *Id.*

Because this issue was not carefully developed, neither party briefed the question of whether there is a "demand-and-refusal" doctrine grafted onto the automatic stay provision. However, no such doctrine is apparent from either the face of the Code or caselaw interpreting its provisions. To the contrary, the Code contains intricate mechanisms for seeking relief from the

---

**3.** "Briefly Judge Lifland's Findings of Fact are: ... that as of the April 19, 1989 hearing Appel-

lee had refused or failed to dismiss the Amended Complaints...." Appellant's Main Brief at 8.

stay.[4] Further, in as much as the form of pleading for a relief from a stay is itself governed by the bankruptcy rules,[5] it is extremely unlikely that Congress intended to establish any informal "end run" around the automatic stay. For this reason, we decline to declare that there is a "demand-and-refusal" requirement grafted onto section 362(h). Accordingly, Judge Lifland's seventh finding of fact, which we read in the disjunctive, is affirmed.

### B. *Section 362(h) and "Willful" Violations*

Willful violations of the automatic stay provision can occur whenever a party with actual notice of the commencement of bankruptcy proceedings violates the automatic stay provision. In *Budget Services Co. v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir.1986), the Fourth Circuit ruled that there was ample evidence in the record to support the conclusion that the creditor knew of the pending petition and intentionally attempted to take actions which violated the automatic stay, in spite of that knowledge. *Id.* at 292–93. Therefore, it found that the bankruptcy court acted within its power in awarding section 362(h) damages. *Id.*

■ We read *Budget Services* to mean that knowledge of bankruptcy proceedings plus actions violative of the automatic stay constitute willful violations of the stay. Section 362(h), thus, requires only general intent to take actions which have the effect of violating the automatic stay and not specific intent to violate the automatic stay. *See also In re Wagner*, 74 B.R. 898, 903 (E.D.Pa.1987) ("the willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order"). Likewise, in *In re Sansone*, 99 B.R. 981 (C.D.Cal.1989), the bankruptcy court rejected the argument that creditors should not be punished under section 362(h) for willful violations of the automatic stay simply because they did not know that their actions violated the automatic stay: "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of the act." *Id.* at 985–87.

MALC cites *In re Shealy*, 90 B.R. 176 (W.D.N.C.1988), for the proposition that an inadvertent violation of the automatic stay provision due to a clerical error rises to the requisite level of willfulness only in rare circumstances.[6] Although the bankruptcy

---

**4.** *See* 11 U.S.C. §§ 362(d), (e), (f) (after notice and hearing, court shall grant relief from stay for cause, if debtor has equity in property, where property is not necessary to effective reorganization, if court fails to order stay continued within thirty days of request for relief or to prevent irreparable damage to property). Elsewhere, the Code enumerates exceptions to the automatic stay. *Id.* § 362(b). Failure of debtor to demand and creditor to refuse to refrain from violating the stay is not among these enumerated exceptions and does not constitute a reason for the automatic termination of the stay. *See id.* § 362(c).

**5.** Fed.R.Bankr. 4001(a) (request for relief from automatic stay must be made by motion in accordance with Fed.R.Bankr. 9014); *see In re Purdy*, 16 B.R. 860 (N.D.Ga.1981). Furthermore, we observe that mere lost opportunity costs imposed upon the creditor by the automatic stay, which MALC has not even asserted, are not substantive grounds for relief from the stay. *United Savings Ass'n v. Trustees of Inwood Forest Ass., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

**6.** In *Shealy*, the creditor, South Carolina Tax Commission, sent a notice of assessment to the debtor, asserting past due taxes, penalty and interest and warning that failure to pay would result in a warrant of distraint being issued. This notice was sent over two months after debtors filed a chapter 13 bankruptcy petition. After the Commission sent a second notice, the debtors' attorney warned the Commission that he would move for section 362(h) sanctions for violation of the automatic stay if such violations continued. The Commission then cancelled its forthcoming warrant of distraint and filed a proof of claim. Seven months later, however, the Commission sent another notice of assessment. Four months after that, the Commission sent a final notice before seizure, and a month later recorded a warrant of distraint. *Shealy*, 90 B.R. at 177.

The Commission asserted that its violation of the automatic stay was caused by a clerical error: a manual check of files had failed to turn up any tax deficiency at the time of the original petition for bankruptcy. The Commission offered evidence that it handled upward of 3 million tax returns each year, including 4,000–5,000 bankruptcy petitions, and that it was spending a great deal of money to prevent the problem from recurring by computerizing its files. *Id.* at 178.

court in that case found that the creditor's violation was initiated by a simple human error and perpetuated by "the mindless functioning of [a] ... computer system," the error was willful nevertheless under section 362(h). *Id.* at 179. Consequently, MALC attempts to distinguish *Shealy* on the ground that MALC, in contrast to the creditor in *Shealy*, learned of its error only when LTV moved for sanctions. Thus, MALC asserts that it, unlike the creditor in *Shealy*, did not persist in violating the stay after debtors' counsel had warned it of section 362(h) sanctions:

> The Court's conclusion [that the Tax Commission had acted willfully] ... was based on the Tax Commission taking no action until it was threatened with a notice [by debtors' counsel], not advising the debtor[s] or the debtors' counsel of their [sic] action cancelling the [first] warrant of distraint and ... [generating] another series of threatening notices after being threatened with sanctions.... MALC [by contrast] not only never intended to file the Amended Complaints in the first place, it was not given an opportunity to correct it's [sic] error prior to the Application for sanctions being filed, [and] it immediately, on it's [sic] own initiative, corrected itself when it learned of its error and did not continue any hostile action after learning of its error.

Appellant's Main Brief at 10–11.

We reject this distinction. We find that it is implicitly based on the argument that MALC was entitled to a demand that it dismiss actions brought in violation of the automatic stay and that it had to refuse to do so before such violations can be determined to be "willful"—an argument we have already dismissed. We believe that, under the standard set out in *Shealy*, MALC's actions were willful within the meaning of section 362(h). *Shealy* establishes that "although not any innocent clerical error will amount to a willful act," a "pattern of inattention demonstrates such a disregard for statutory duty [to observe the automatic stay] as to amount to a 'willful' one." *Shealy*, 90 B.R. at 180. Here, MALC's pattern of inattentiveness can be derived from two related incidents. When

it filed the thirty-eight amended complaints that are the subject of the present appeal in the fall of 1988, MALC unquestionably ignored its previous filing of proofs of claim with the bankruptcy court in New York against LTV and its voluntary dismissals, in July of 1988, of three complaints against LTV in the Michigan district court that violated the automatic stay.

Although MALC has not cited *In re Academy Answering Service, Inc.*, 100 B.R. 327 (N.D.Ohio 1989), we recognize that it qualifies, to a limited extent, the proposition that a violation of the stay resulting from clerical error always falls within the intended scope of section 362(h). In *Academy Answering*, the debtor filed a chapter 11 petition in December, 1986. The Internal Revenue Service ("IRS") filed a proof of claim in April, 1987. Without seeking relief from the automatic stay, the IRS then levied on the debtor's bank account and offset certain of the debtor's pre-petition overpayments against a pre-petition tax liability. The IRS claimed that its stay violation resulted from a delay in reprogramming its computer to accommodate certain changes in the law. *Academy Answering*, 100 B.R. at 329. The bankruptcy court ruled that "the inadvertence involved in failing timely to modify one's computer to accommodate changes in the law does not rise to the level of 'willfulness'" under section 362(h). *Id.* at 330.

█ That case is distinguishable from the instant case on two grounds. First, MALC's stay violation, although occasioned by an order of Judge Lambros to file amended complaints in the asbestos litigations, did not result from a change in the law, as did the defendant's in *Academy Answering*. MALC asserts only that its computer programmer erred, not that his or her negligence was in some way excusable by any special circumstances. Furthermore, we note the Judge's unchallenged finding that each summons and amended complaint, signed by MALC, clearly delineated LTV as "BANKRUPT," *see* Order, Conclusion of Law No. 8, and we thus admit to skepticism as to whether MALC's filing of amended complaints was truly "ac-

cidental" as MALC asserts. In any event, sanctions are designed to compel counsel to take full responsibility for all of the pleadings they sign. Thus, we emphatically reject the notion that MALC should be allowed to evade sanctions imposed on it because the mistakes in questions were made by a non-lawyer.

The second reason *Academy Answering* is distinguishable is that there, the court was persuaded in its finding of "no willful violation" by the fact that the creditor "returned matters to their *status quo ante*" prior to the motion for sanctions, and, therefore, the debtor was not "forced to involve the bankruptcy court in returning the situation in [sic] its pre-violation state." *Academy Answering*, 100 B.R. at 330. We have already declined to graft a "demand-and-refusal" requirement onto section 362(h). Thus, the fact that MALC failed to withdraw its amended complaints only because LTV did not contact MALC prior to moving for sanctions and then declined to consent to a stipulation requesting withdrawal of the complaints is legally irrelevant. We will not limit LTV's right to exercise its bankruptcy remedies against willful violators such as counsel who repeatedly, albeit "accidentally," file actions against debtors despite knowledge of a bankruptcy petition. Accordingly, in light of all the foregoing, we conclude that the bankruptcy court's finding of a willful violation of section 362(h) is supported by the law.

## C. *Section 362(h) and the Corporate Debtor*

■ In addition to the above-discussed grounds for reversal, MALC asserts that the plain meaning of section 362(h) limits recovery of damages for willful violations of the automatic stay to "individuals," not corporations like LTV. MALC cites the definitional section of the Code, which defines "person" to include an "individual ... and corporation ...", 11 U.S.C. § 101(35),

as distinguishing between individuals and corporations. Also, the definition of "corporation" in the Code does not include individuals. 11 U.S.C. § 101(8). One respected commentator observes that "a corporation is not an individual within the meaning of the Bankruptcy Code...." 2 *Collier on Bankruptcy* ¶ 101.35 n. 1 (L. King ed. 15th ed. Supp.1989) (citing *In re SFW, Inc.*, 83 B.R. 27, 18 C.B.C.2d 584 (S.D.Cal.1988)). *See also Esselen Assoc., Inc., v. Crysen/Montenay Energ. Co.*, 102 B.R. 25, 26 n. 1 (S.D.N.Y.1989) (bankruptcy court's award of sanctions to a corporation "seems in error"); *In re Brilliant Glass*, 99 B.R. 16, 18 (C.D.Cal.1988) ("I am not prepared to extend the benefits of S 362(h) to a corporation because § 362(h), by its words, benefits an individual. However, contempt is an appropriate remedy ..."). The commentator further opines that although "the reasons for limiting [section 362(h)'s] benefits to individuals ... are not entirely clear.... rigidities in the statute are unlikely to prove troublesome since entities other than individuals should be entitled to protection under" the bankruptcy court's civil contempt powers [7]—thus lending support to MALC's view that section 362(h) is not the proper remedy. *Collier, supra*, at ¶ 362.12 at 362–75,—76.

The courts, however, have overwhelmingly rejected this literal interpretation of section 362(h), which would exclude corporate debtors from its protection. For example, the oft-quoted language of the Court of Appeals for the Fourth Circuit squarely establishes that:

> § 362(h) must be read in conjunction with the rest of § 362 and ... its sanctions are not limited to the relief of an "individual" in the literal sense. The Bankruptcy Code does not define the word individual. We agree that it seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay provisions of the Code as opposed to

---

7. Section 105(a) of the Code authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.... [including] to prevent an abuse of process." 11 U.S.C. § 105(a). As noted above, Judge Lifland declined to exercise his civil contempt powers against MALC, holding in abeyance LTV's request for section 105(a) sanctions.

debtors which are corporations or other like entities. Such a narrow construction of the term would defeat much of the purpose of the section, and we construe the word "individual" to include a corporate debtor.

*Budget Service,* 804 F.2d at 292. Through our own research, we have located the following cases endorsing the approach of the Fourth Circuit: *United States v. Inslaw, Inc.,* 113 B.R. 802 (D.D.C.1989); *Matter of Schewe,* 94 B.R. 938, 948 (W.D.Mich. 1989); *In re Kroh Bros. Development Co.,* 91 B.R. 525, 539 n. 3 (W.D.Mo.1988); *In re Skinner,* 90 B.R. 470, 474 n. 2 (D.Utah 1988); *In re Randy Homes Corp.,* 84 B.R. 799, 802 (M.D.Fla.1988); *In re NWFX, Inc.,* 81 B.R. 500, 503 n. 3 (W.D.Ark.1987); *Nash Philips/Copus, Inc. v. el Paso Floor, Inc.,* 78 B.R. 798, 803 (W.D.Tx.1987); *see also Homer Nat'l Bank v. Namie,* 96 B.R. 652, 655 (W.D.La.1989) (section 362(h) " 'must be read in conjunction with the rest of section 362 and its sanctions are not limited to the relief of an individual in the literal sense' ") (quoting *Budget Service,* 804 F.2d at 292); *In re Wagner,* 74 B.R. 898, 903 n. 12 (E.D.Pa.1987) (endorsing approach of interpreting section 362(h) "in accordance with its intended purpose rather than in a literal fashion"). On the strength of this authority, we conclude that the fact that LTV is a corporation is not fatal to its application for sanctions.

### D. *Attorneys' Fees as Damages*

■ Judge Lifland awarded LTV "damages" pursuant to section 362(h), which reads as follows: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). MALC contends that this award was improper because the only proof of damages that LTV submitted concerned attorneys' fees incurred in connection with LTV's motion for section 362(h) sanctions.[8]

Thus, while MALC would apparently not object to an award of attorneys' fees, it found Judge Lifland's failure to state that he was awarding attorneys' fees offensive. *See* Appellant's Reply Brief at 4–5 ("Appellant does not contest ... that a Court has the authority to award attorneys fees.... What is contested is Appellee's view that 'compensatory damages' are the attorneys fees in the case"; "Here there is no record of loss suffered and again nothing was said [by Judge Lifland] about attorney's [sic] fees."). According to MALC, if attorneys' fees are considered damages, then LTV had an obligation to mitigate its attorneys' fees/damages by accepting MALC's offer to withdraw its amended complaints. *See id.* at 5–6. On the other hand, MALC asserts that if attorneys' fees are not the damages suffered, then the damage award is erroneous because it is based on "mere speculation, guess or conjecture" in violation of section 362(h). *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir. 1988). We reject each of these contentions, as we conclude that section 362(h), on its face, appears to directly embrace attorneys' fees as damages. Furthermore, the damages awarded were not based upon conjecture but on the proof submitted to the bankruptcy court. Although we agree that there is a general duty to mitigate damages, we fail to see how LTV could have mitigated in the way asserted, as the attorneys' fees had already been incurred in the filing of the order to show cause application with the bankruptcy judge and the offer to withdraw was made after this application. In addition, we have held, as discussed at length above, that LTV had no duty to make a demand on MALC to withdraw the violative complaints before making the application to the bankruptcy court. Finally, we believe such a duty to mitigate is inapplicable in a case like this one involving repeated violations of the automatic stay, because without court intervention such violations would be certain to recur.

■ Finally, MALC relies on *In re Turner,* 88 B.R. 131 (N.D.Ohio 1988) for the

---

**8.** LTV presented to the court four affidavits setting forth expenses incurred pursuing its injunction application.

proposition that "an award of damages and/or attorneys' fees is required, pursuant to section 362(h), where a willful violation of the automatic stay occurs *and* the debtor is injured." *Id.* at 133 (emphasis added). *Turner,* however, is of no help to MALC. In *Turner,* an unsecured creditor filed a civil RICO action against the debtor despite knowledge of bankruptcy proceedings. The debtor moved to dismiss the complaint as violative of the automatic stay; later, the creditor moved for relief from the automatic stay. When the court considered the debtor's motion for attorneys' fees under section 362(h), the court denied such fees only because "[n]o injury was claimed by the debtor *nor* was a request for attorneys' fees made" for expenses incurred during the period up to the motion asserting the debtor's automatic stay rights—i.e. the motion to dismiss the violative action. *Id.* (emphasis added). Rather, the request for attorneys' fees pertained solely to expenses incurred in opposing the creditor's motion for relief from the automatic stay. The facts of this case fall directly within the analysis of the *Turner* court: that section 362(h) authorizes damages in the form of attorneys' fees incurred by a debtor asserting its automatic stay rights (although not incurred in opposing a proper motion for relief from stay) up to the moment of a motion to correct the violation even if there are no damages apart from attorneys' fees.

In addition, there are cases which have established the appropriateness of an award of attorneys' fees incurred by a debtor in connection with its assertion of its rights under the automatic stay provision. *See, e.g., Budget,* 804 F.2d at 293 ("proof that a debtor has been injured ... is sufficient to invoke the sanctions" under section 362(h)); *In re Stephen W. Grosse, P.C.,* 84 B.R. 377, 382 (E.D.Pa.1988) (even absent § 362(h), costs and attorneys' fees are appropriate relief for willful violations of the automatic stay provision), *aff'd* 879 F.2d 857 (3d Cir.1989); *In re NWFX Inc.,* 81 B.R. 500, 504 (W.D.Ark.1987) (actual damages of $2,490 in attorneys' fees incurred in moving for section 362(h) sanctions awarded); *In re Inslaw Inc.,* 76 B.R.

224 (D.D.C.1987). Thus, we decline to reverse the Bankruptcy Court's holding that LTV suffered damages "arising from and in connection with the unlawful commencement" of the asbestos litigation, Order at 9, in the form of attorneys' fees in seeking to vindicate its rights under section 362(a).

### CONCLUSION

Judge Lifland's determination that MALC had failed to withdraw its amended complaints as of April 19, 1989 was not clearly erroneous; LTV was under no obligation to accept MALC's offer to withdraw its violative complaints after LTV had moved for damages under section 362(h) of the Code or even to notify MALC of the violations before making such an application. In addition, we conclude that MALC's violation of the automatic stay falls within the definition of "willful" under section 362(h). Furthermore, we believe that section 362(h) authorizes damage awards to corporate debtors. Finally, we find that attorneys fees incurred by a debtor in moving to correct violations of the automatic stay are cognizable damages under section 362(h). Accordingly, for all the foregoing reasons, the Order of the bankruptcy court is hereby affirmed.

SO ORDERED.