**In re OMNI GRAPHICS, INC., Debtor.**

**Douglas F. MANN, Trustee, Plaintiff,**

v.

**MARINE BANK WEST and Travis Adler, Defendants.**

**Bankruptcy No. 87–05002.**
**Adv. No. 88–0372.**

United States Bankruptcy Court,
E.D. Wisconsin.

May 8, 1990.

David M. Neff, Chicago, Ill., for plaintiff-trustee.

C. Scott Pryor, Milwaukee, Wis., for defendant-Marine Bank West.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This action is based upon an alleged violation of the automatic stay by Marine Bank West ("the Bank"). The trustee and

the Bank have filed cross-motions for summary judgment. The Bank has also filed a motion for annulment of the automatic stay. A stipulation of facts, briefs and oral arguments have been presented to the court.

The issues are:

1. Did the Bank violate the automatic stay under 11 U.S.C. § 362(a)?

2. If so, what is the appropriate measure of damages? As part of this inquiry, the court must also consider if the doctrine of equitable subordination applies and if punitive damages should be awarded.

## FACTS

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O). On October 15, 1987, pursuant to an agreement entitled "Renunciation of Rights and Collateral Surrender Agreement" ("surrender agreement") executed by the Bank, Omni Graphics, Inc. ("debtor") and guarantors Travis Adler and Ann Adler, possession of all of the debtor's assets which had been pledged as security to the Bank was surrendered to the Bank.[1] On November 12, 1987, an involuntary petition under chapter 7 was filed against the debtor by petitioning creditors Bart/McIntosh Paper Company, Midland Paper Company, Reliable Paper Company and Jim Walter Papers ("petitioning creditors"). On November 20, 1987, Atty. David M. Neff, representing the petitioning creditors, telephoned David Rosenwald, the Bank's loan officer, and informed him of the filing of the involuntary petition. Atty. Neff confirmed this telephone conversation by a letter dated November 24, 1987 to Mr. Rosenwald. On December 9, 1987, the Bank proceeded with a public sale of the debtor's assets. The sale produced gross proceeds of $273,213 and net proceeds of $249,805.40. After the Bank applied the net proceeds of the public sale and the $117,000 proceeds it thereafter realized from the sale of certain real estate owned

by guarantor Travis Adler, a substantial deficiency remained.[2]

The parties have stipulated that, except for the bankruptcy estate's costs and attorneys' fees in connection with this adversary, there are no actual damages. The parties have also stipulated that the Bank's security agreement was properly perfected and that no bankruptcy court approval was ever sought or obtained by the Bank before the sale was conducted.

On December 28, 1987, an order for relief was entered. On January 6, 1988, Douglas F. Mann was appointed chapter 7 trustee.

## DID THE BANK VIOLATE THE AUTOMATIC STAY?

■ The answer to this question depends upon whether the debtor's estate retained any property interest in the assets as of the time they were sold at the December 9, 1987 public sale. Nothing in the October 15, 1987 surrender agreement indicates that title was ever transferred from the debtor to the Bank. Paragraph 3 of the surrender agreement recites that the Bank and the guarantors "irrevocably and unconditionally surrenders [sic] possession of all of the Collateral pledged to the Bank." The key phrase reappearing throughout the surrender agreement (in seven different places) is "surrender of possession." The only reference in the surrender agreement to title is in paragraph 14 where it is stated that the debtor and the guarantors shall execute any documents necessary "to evidence *their ownership and title* to the Collateral" (emphasis added). This is a clear recognition by the parties that, while possession of the collateral was transferred to the Bank, title was not. The debtor, under the surrender agreement, waived its right to further notice of disposition of the assets and its right of redemption. By so doing, it may well be that it retained only bare legal title. Nevertheless, that, in and of itself, is sufficient to constitute property of the estate within the meaning of § 541

---

1. Under the terms of the surrender agreement, these assets remained on the debtor's premises, but subject to the Bank's control.

2. Although the precise amount of this deficiency was never clearly delineated, it is undisputed that it exceeded $150,000.

of the Bankruptcy Code which, in turn, required the Bank to obtain relief from the automatic stay before taking any further action regarding its collateral. *In re Shepard*, 29 B.R. 928 (Bankr.M.D.Fla.1983). It is generally recognized that property of the estate under § 541(a) is broadly defined and is intended to include in the estate any property interest, legal or equitable, which the debtor had as of the commencement of the case. *Matter of Haynes*, 679 F.2d 718 (7th Cir.1982). *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), has declared:

> Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate.

The Bank's action in moving forward with the public sale after the involuntary petition in bankruptcy was filed was an exercise of control over property of the estate which violated § 362(a)(3). The fact that the debtor did not have the right to possession of the property did not mean that the estate did not have a property interest in the assets sold at the public sale. Possession and ownership are two separate concepts. This distinction was recognized in *In re Hartberg*, 25 U.C.C.Rep.Serv. (Callaghan) 1429 (Bankr.E.D.Wis.1979), by this court's predecessor, the Hon. Howard A. Hilgendorf, who declared that the right to possession held by a secured creditor to a vehicle did not deprive the debtors of their ownership interest in this vehicle. *See also* Ginsberg, *Bankruptcy* § 5.01(b) ("A debtor need not even have a right to possess the property on the petition date for it to become property of the estate.")

*In re Riding*, 44 B.R. 846 (Bankr.Utah 1984), relied upon by the Bank, does not alter this principle. *Riding* only holds that the right to redeem is a property right. It does not state that bare legal title held by the debtor is not a property right.

§ 303(f)[3] of the Bankruptcy Code provides no comfort to the Bank. § 303(f) is intended to enable a debtor involved in an involuntary petition to continue doing business during the so-called "gap period" before the entry of an order for relief. It is not intended as a shelter for the Bank. Here, the sale of the assets was conducted by the Bank, not by the debtor, and in no manner enabled the debtor to carry on its business operations. Quite to the contrary, the surrender agreement contemplated the debtor not engaging in business and was geared to a complete liquidation of all of the debtor's assets. Because § 303(f) does not apply, it is unnecessary to delve further and consider the impact of § 549[4], which permits a trustee to avoid post-petition transfers of property authorized under § 303(f) except to the extent of any post-petition value furnished by transferees. Moreover, the Bank was not a "transferee" within the meaning of § 549(b) since it did not furnish any post-petition value.

The Bank violated the automatic stay under § 362(a), and its motion to annul the stay is denied.

### WHAT ARE APPROPRIATE DAMAGES?

11 U.S.C. § 362(h) of the Bankruptcy Code provides:

---

**3.** § 303. Involuntary cases.

(f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

**4.** § 549. Postpetition transactions.

(a) Except as provided in subsections (b) ... of this section, the trustee may avoid a transfer of property of the estate—

(1) made after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

\* \* \* \* \* \*

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

There is ample authority for the proposition that "individual" as used in § 362(h) includes corporations and also includes parties other than debtors. *Homer National Bank v. Namie,* 96 B.R. 652 (W.D.La.1989); *Budget Service Company v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir. 1986); *In re Tel–A–Communications Consultants,* 50 B.R. 250 (Bankr.D.Conn.1985); *In re Chateaugay Corp.,* 112 B.R. 526 (S.D.N.Y.1990).

The Bank knew of the involuntary petition before the December 9, 1987 public sale was held. A willful violation of the automatic stay occurs when a creditor acts deliberately with knowledge of the bankruptcy petition. *Budget Service Company v. Better Homes of Virginia, Inc., supra; In re Knaus,* 889 F.2d 773 (8th Cir.1989); *In re Aponte,* 82 B.R. 738, 742 (Bankr.E.D. Pa.1988). In this case, the Bank's actions were clearly willful. The Bank is not a novice. It took a calculated gamble in proceeding without first seeking relief from the automatic stay, and its actions constituted an improper exercise of control over property of the estate.

■ Actions in violation of the automatic stay are generally held to be void. 2 *Collier on Bankruptcy* §§ 362.03 and 362.-11 (15th Ed.1990); *Matter of Allen,* 816 F.2d 325 (7th Cir.1987); *In re Smith,* 876 F.2d 524 (6th Cir.1989); *In re Garcia,* 109 B.R. 335 (N.D.Ill.E.D.1989). In the case at bar, the property was sold by the Bank to purchasers who provided post-petition value and who are protected from avoidance by the trustee by virtue of § 549(b) and § 550(b). But the trustee may still recover the sale proceeds in the hands of the Bank. 4 *Collier on Bankruptcy* § 550.02 (15th

Ed.1990); *In re Belize Airways Ltd.,* 7 B.R. 601 (Bankr.S.D.Fla.1980). In an attempt to avoid this consequence, the Bank argues that, if it were required to remit the sale proceeds to the trustee, the trustee would only have to return the same proceeds to the Bank because of the underlying security agreement. This "exercise in futility" argument was presented to the district court by the Internal Revenue Service in *Matter of Demos,* 85–C–1225 (E.D. Wis.1987). In *Demos,* the IRS had acquired the proceeds of the debtor's life insurance policies under its tax lien. This occurred before the debtor's discharge was granted and without the IRS first obtaining relief from the automatic stay. The district court rejected the IRS' argument and ordered it to turn over the proceeds to the debtor, declaring:

> While the IRS may ultimately retrieve the very same funds it must now turn over, the situation is entirely of its own making. Had it simply followed the stay, the matter may well have been settled shortly after the (debtor's) discharge.

■ Because *Demos* is controlling upon this court, the Bank shall be required to turn over the net sale proceeds to the trustee. This does not necessarily mean that the Bank loses its status as a secured creditor unless the court invokes the doctrine of equitable subordination under § 510(c).[5] Equitable subordination is essentially a discretionary exercise of a court's equitable powers and is to be applied only sparingly. *Allied Technology, Inc. v. R.B. Brunemann & Sons,* 25 B.R. 484 (Bankr.S.D. Ohio.W.D.1982). Courts have developed the following three-pronged test, all of which must be met before the Bank's claim is equitably subordinated to the claims of all of the unsecured creditors:

1. The claimant must have engaged in some type of inequitable conduct,

5. § 510. Subordination.
   (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
   (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
   (2) order that any lien securing such a subordinated claim be transferred to the estate.

2. The misconduct must have resulted in injury to creditors or conferred an unfair advantage on the claimant, and

3. Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*Matter of Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977); *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135 (5th Cir.1987). Here, the second prong—injury to creditors by the conferring of an unfair advantage upon the Bank—is absent. The parties have stipulated to the lack of actual damages other than the fees and costs involved in this adversary. Counsel for the trustee has acknowledged that application of the doctrine of equitable subordination would be unduly harsh under the particular circumstances involved. Therefore, equitable subordination shall not be invoked.

■ This court also does not believe that punitive damages are fitting. An award of punitive damages requires not only a willful violation of the automatic stay but also a finding of "appropriate circumstances" which has been interpreted as meaning "egregious, intentional misconduct on the violator's part." *In re Ketelsen*, 880 F.2d 990 (8th Cir.1989); *In re Knaus*, 889 F.2d 773 (8th Cir.1989). *See also In re Midkiff*, 85 B.R. 467 (Bankr.S.D.Ohio 1988); *In re Carrigan*, 109 B.R. 167 (Bankr.W.D.N.C. 1989); *In re Coates*, 108 B.R. 823 (Bankr. M.D.Ga.1989). The facts in this case do not rise to the level of egregious conduct by the Bank and do not justify punitive damages.

■ The appropriate measure of damages to deter similar violations of the automatic stay are trustee's fees, trustee's attorneys' fees and costs. The fact that the estate suffered no damages does not preclude this court from awarding fees and costs. Attorneys' fees and costs are, in and of themselves, a form of damages under § 362(h) which can be awarded in the absence of other actual damages. *In re Chateaugay Corp.*, 112 B.R. 526 (S.D.N.Y. 1990).

Counsel for the trustee shall submit a statement of its fees, statutory fees of the trustee and costs to the court and to the Bank within 10 days. The Bank shall then have 10 days thereafter to file any objections, after which time the court shall fix all fees and costs. These damages shall then be deducted from the net sale proceeds totalling $249,805.40, which the Bank shall forthwith remit to the trustee. After such deduction is made, the remaining net sale proceeds shall be returned by the trustee to the Bank.

## ORDER

The court having this date rendered its decision.

IT IS ORDERED:

1. The motion of plaintiff, Douglas F. Mann, trustee, for summary judgment declaring that as a matter of law the defendant, Marine Bank West ("Bank"), willfully violated the automatic stay under 11 U.S.C. § 362(a) and that plaintiff recover costs, attorneys' fees and trustee's fees as provided under 11 U.S.C. § 362(h) be and the same is hereby granted.

2. The motions of the Bank for summary judgment and for annulment of the automatic stay be and the same are hereby denied.

3. Jenner & Block, attorneys for the plaintiff, shall submit to the court and to the Bank a statement of costs, attorneys' fees and trustee's fees within 10 days from the date of this order. The Bank shall then have 10 days from receipt of this statement to file any objections.

4. The Bank shall forthwith remit to the plaintiff the net sale proceeds of $249,-805.40 which shall be retained by the plaintiff in an interest-bearing escrow account. After deduction of such costs and fees as are hereafter determined by this court, the remaining net sale proceeds together with interest shall be remitted to the Bank.

5. A telephonic hearing shall be held on June 4, 1990 at 11:00 a.m. at which time the

court shall determine the amount of costs, attorneys' fees and trustee's fees.